IN THE MATTER OF A RHODE ISLAND GRAND JURY
SUBPOENA.

Middlesex. October 8, 1992. - January 8, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Grand Jury. Practice, Criminal,* Grand jury proceedings, Access to wit-
nesses. *Uniform Law to Secure the Attendance of Witnesses from
Without a State in Criminal Proceedings. Subpoena. Accountant. Wit-
ness,* Subpoena. *Comity. Constitutional Law,* Subpoena, Access to wit-
nesses. *Due Process of Law,* Grand jury proceedings.

Discussion of the considerations underlying the nonappealability of an in-
terlocutory order denying a motion to quash a grand jury subpoena re-
questing production of documents.[107-109]
An interlocutory appeal was not available to a person under investigation
by a grand jury in another State, who sought review of a Superior
Court judge's order denying that party's motion to quash a subpoena
served on his accountant [109-111]; this court further held that a party
claiming a privilege in documents that are in the custody of another has
no standing to intervene to move to quash a grand jury subpoena re-
quiring the custodian to produce the documents [111].
This court concluded that, in enforcing an out-of-State grand jury sub-
poena served on an in-State prospective witness, a judge in Massachu-
setts had discretion to rely solely on the certificate of the judge in the
requesting State to support his finding, required under G. L. c. 233, §
13A, that the witness was material and necessary to the grand jury
proceeding in the requesting State. [111-117]

MOTION filed in the Superior Court Department on May
22, 1992.

The proceeding was heard by *John P. Forte,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*John K. Markey (Michael F. Connolly & Richard W.
Rose* with him) for John Doe.

*J. Richard Ratcliffe*, Assistant Attorney General of Rhode Island (*Walter Gorman*, Deputy Attorney General, & *Robert Carr*, Special Assistant Attorney General, with him) for the State of Rhode Island.

*Pamela L. Hunt*, Assistant Attorney General, for the Attorney General of the Commonwealth, intervener.

LIACOS, C.J. This case arose out of a Rhode Island grand jury investigation of public engineering and architectural contracts in that State. On April 10, 1992, a grand jury in Rhode Island authorized the issuance of a subpoena duces tecum to Thomas Bates, an accountant residing in Massachusetts. The subpoena directed Bates to produce the financial records of a John Doe, a Rhode Island resident and a target of the investigation. On the same day, a judge of the Rhode Island Superior Court issued a certificate pursuant to the Uniform Law to Secure the Attendance of Witnesses, stating that Bates is a material and necessary witness in the grand jury investigation. See R.I. Gen. Laws. tit. 12, c. 16, §§ 1-13. The judge granted Bates immunity from arrest and service of criminal or civil process while in Rhode Island to appear before the grand jury; he also provided for the reimbursement of all expenses which Bates might incur in connection with the production of the subpoenaed documents.[1]

On April 21, 1992, Rhode Island prosecutors sent the subpoena to the office of the district attorney for the Northern District (Middlesex County) in Massachusetts. Personnel of that office had Bates served with the subpoena. Bates agreed to deliver all the requested documents to a representative of the Rhode Island grand jury. On May 16, 1992, Bates notified John Doe of the subpoena. Two days later, John Doe's counsel conducted a limited review of the documents pursuant to an agreement with the Rhode Island prosecutors. This review gave rise to a dispute as to the scope of the subpoena. Doe's counsel took the position that the subpoena covered

---

[1] The Rhode Island judge's order gave Bates the option of delivering certified copies of the relevant documents to an agent of the grand jury in lieu of appearing physically in Rhode Island.

only documents related to business entities in which Doe had a current interest. He claimed that only three of the documents which he had reviewed qualified as such. The Rhode Island prosecutors objected to this interpretation of the subpoena, whereupon the parties agreed to deliver the documents to Bates' attorney until resolution of the dispute.[2]

On May 19, 1992, the Rhode Island grand jury authorized the issuance of another subpoena directed to Bates. This new subpoena expanded the scope of the original one. It adopted the interpretation of the first subpoena which the Rhode Island prosecutors had advocated and aimed at ensuring that the grand jury would receive all necessary documents to conduct its investigation. On the same day, another judge of the Rhode Island Superior Court issued another certificate stating that Bates is a material and necessary witness in the grand jury proceeding. The judge also granted Bates the same protection against service of process and payment of expenses as Bates enjoyed under the first certificate. On the following day, Bates was served with the new subpoena and certificate.

Bates restated his willingness to deliver the subpoenaed documents to a representative of the Rhode Island grand jury. Doe, however, continued to object. On May 22, 1992, Doe filed a motion to quash the subpoena with the Massachusetts Superior Court. The motion judge heard arguments on the same day. On May 26, 1992, he issued an order directing Bates to comply with the Rhode Island subpoena. The next day, Doe filed a motion to stay this order pending appeal, together with a motion to report questions of law pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). On June 1, 1992, the motion judge denied both motions. Doe petitioned a single justice of the Appeals Court and, on June 5, 1992, the single justice stayed the execution of the order directing Bates to comply with the Rhode Island subpoena. On

---

[2]The documents subsequently were transferred to the custody of the Massachusetts Attorney General, pending our decision in this appeal.

September 3, 1992, we granted Rhode Island's application for direct appellate review.

On appeal, Doe argues that the motion judge did not follow the procedures set forth in the Uniform Law to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Uniform Act), G. L. c. 233, §§ 13A-13D (1990 ed.).[3] Specifically, Doe contends that the motion judge, rather than fulfilling his statutory duty to determine independently that Bates is a material and necessary witness in the Rhode Island investigation, merely "rubber-stamped" the conclusions set forth in the Rhode Island judicial certificate. The Rhode Island prosecutors dispute this contention. They assert that the motion judge did inquire into the materiality issue in the course of the hearing below. In any event, they argue, it was within the motion judge's discretion to find that Bates is a material and necessary witness on the sole basis of the conclusions contained in the certificate of the Rhode Island judge. The Massachusetts Attorney General, as an intervener, supports this argument.

At the outset, we must decide whether Doe has standing to appeal from the denial of his motion to quash. We have ruled recently that such orders are interlocutory and nonappealable. *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 492 (1992). Like the present case, *Matter of a Grand Jury Subpoena* involved an accounting firm and its client. A grand jury issued a subpoena directing the accountant to produce documents which its client claimed to be privileged. Both the accountant and the client unsuccessfully had moved a Superior Court judge to quash the subpoena. We held that, in order to obtain appellate review of the subpeona, the accountant had to disobey it. A contempt order would then issue, from which the accountant could appeal. *Id.* at 492-493. See *Commonwealth* v. *Winer*, 380 Mass. 934, 935 (1980), and cases cited. As to the accountant's corporate client, we

---

[3]Doe also raises claims of privilege against the production of the subpoenaed documents, which claims he argued unsuccessfully before the motion judge.

held that it had no standing to intervene. The client's opportunity to challenge the subpoena, we explained, would arise if and when the grand jury investigation issued an indictment and a criminal prosecution ensued. *Matter of a Grand Jury Subpoena, supra* at 496. See *Cronin* v. *Strayer*, 392 Mass. 525, 528 (1984); *Borman* v. *Borman*, 378 Mass. 775, 781-782 (1979). Our holding in *Matter of a Grand Jury Subpoena, supra*, was motivated in part by the need to eliminate unwarranted delay of the investigative process. *Id.* at 497. Persons under investigation, we noted, often bring motions to quash subpoenas for the sole purpose of hindering grand jury inquiries. Allowing appeals from the denial of these motions offers an incentive to challenge a judge's order regardless of the actual merits of the case. *Id.* Win or lose, an appellant has managed to gain time during which "the targets are free, memories of other witnesses are fading, evidence is disappearing . . . and events may escape scrutiny as the statute of limitations takes its toll." *Id.*, quoting *Matter of Klein*, 776 F.2d 628, 631 (7th Cir. 1985). Requiring a custodian of documents to incur contempt as a prerequisite to appellate review, on the other hand, increases the likelihood that only colorable claims will be appealed at the investigative stage of criminal cases.[4] *Matter of a Grand Jury Subpoena, supra* at 496.

The present case illustrates the very kind of undue hindrance of the investigative process which we sought to preclude in *Matter of a Grand Jury Subpoena, supra.* The Rhode Island subpoena was directed not at John Doe but at his accountant, who never objected to delivering the relevant documents. John Doe's invocation of appellate review at this early stage of the investigative process has delayed the re-

---

[4]The *Matter of a Grand Jury Subpoena* rule does not create undue hardship for accountants and their clients. As we explained in that case, contempt orders "can be, and usually are, stayed pending appeal if the judge determines that the claim may have merit." 411 Mass. 489, 498-499 (1992). In cases involving third-party privilege holders, such as the present one, we have urged trial judges to stay orders of contempt pending appeal provided that the objections to the subpoena are not frivolous. *Id.* at 499.

lease of the subpoenaed documents. The Rhode Island grand jury has been waiting for the documents for over six months. By the time its term expires on January 21, 1993, the grand jury may not have had a single opportunity to examine the documents necessary for its investigation of possible illegalities in the awarding of State contracts.

John Doe, nonetheless, claims that his is a special case which warrants the relaxation of the procedures for challenging a subpoena which we set forth in *Matter of a Grand Jury Subpoena*. To support this contention, Doe first argues that the Rhode Island subpoena covers tax returns that are privileged under State and Federal law. Even assuming that Doe's arguments have merit, Doe cannot raise privilege claims in this State. Under the Uniform Act, such claims are "a matter for the requesting jurisdiction to rule on and are not appropriately addressed to the state court issuing the subpoena." *Tracy* v. *Superior· Court*, 168 Ariz. 23, 43 (1991), citing *In re Cal. Grand Jury Investigation*, 57 Md. App. 804, 812, cert. denied sub nom. *Rees* v. *Los Angeles County*, 467 U.S. 1205 (1984). See *In re Pitman*, 26 Misc. 2d 332, 333 (N.Y. 1960). Holding otherwise would unnecessarily duplicate judicial determination of privilege claims.[5]

Next, Doe argues that he comes within the exception to the general rule of nonappealability of interlocutory orders that the United States Supreme Court created in *Perlman* v. *United States*, 247 U.S. 7 (1918). In that case, a company partly owned by Perlman had submitted documents to a Fed-

---

[5]Doe's reliance on *Commonwealth* v. *Steinberg*, 404 Mass. 602, 605 (1989), for the argument that privilege claims may be litigated in the courts of the forwarding State is misplaced. In *Steinberg*, a Florida witness was summoned to testify in Massachusetts. A Florida judge compelled the witness to attend the Massachusetts proceeding. After he arrived in the Commonwealth, the witness complained that the Florida judge had determined erroneously that he was a material witness in the Massachusetts proceeding. We noted that this claim should have been raised in Florida. *Id.* at 604-605.

In the present case, Massachusetts is the forwarding State — as Florida was in *Steinberg*. Thus, *Steinberg* stands for no more than the proposition that, in the present case, Bates must — and did — have an opportunity to litigate the materiality and necessity issues in Massachusetts.

eral court during a patent lawsuit. After the dismissal of the
suit, the United States Attorney investigated Perlman for
perjury. A subpoena was issued to the court clerk, directing
him to produce for the grand jury some of the documents
that had been filed in the course of the original litigation.
The Supreme Court held that Perlman had the right to ap-
peal from the order denying his motion to quash. *Id.* at 13.
Doe argues that *Perlman* stands for the proposition that,
whenever the custodian of subpoenaed documents refuses to
incur contempt, the party claiming a privilege has standing
to appeal from an order denying a motion to quash the sub-
poena. Just as the court clerk in *Perlman* refused to chal-
lenge the subpoena, Doe contends, Bates unmistakably indi-
cated in the present case that he would not incur a contempt
order.

We have, however, already rejected this broad reading of
*Perlman* in *Matter of a Grand Jury Subpoena, supra* at 493-
496. There, we ruled that the *Perlman* exception applies only
to cases where the custodian of documents has "absolutely *no*
relationship" to the party claiming to hold a privilege in the
documents (emphasis in original). *Id.* at 494. Thus, the *Perl-
man* exception has no application in cases such as the present
one, where an accountant has custody of his client's docu-
ments. *Id.* We see no reason today to reconsider this inter-
pretation of *Perlman*, which we adopted after a thorough
analysis of the history of that case. Nor do we agree with
Doe's contention that our interpretation of *Perlman* should
be modified for purposes of the present case because Bates is
a sole practitioner with allegedly limited resources to stage a
defense to a contempt charge whereas the accountant in
*Matter of a Grand Jury Subpoena* was a large firm. We
have declined to follow the cases interpreting *Perlman*
broadly because we believed that those custodians who enjoy
a special relationship with their clients would protect these
clients in meritorious cases. *Matter of a Grand Jury Sub-
poena, supra* at 496 n.9. We would undercut this rationale if
we exempted smaller accountancy firms from this responsi-
bility. More significantly, we would grant targets of investi-

gation new avenues of opportunity to argue that their accountants do not have sufficient resources to incur contempt, thereby delaying grand jury proceedings. We decline to accept these arguments and hold that Doe has no standing to bring this appeal.

The Attorney General of the Commonwealth urges us further to hold that a party claiming a privilege in documents that are in the custody of another has no standing to intervene to move to quash a subpoena in the first place. We agree. Implicit in our holding in *Matter of a Grand Jury Subpoena, supra,* is the requirement that only the party subpoenaed — not the party claiming a privilege in the documents — has standing to intervene to move to quash the subpoena. See *Commonwealth* v. *Winer, supra* at 935. This conclusion is warranted by the same concerns for the efficiency of criminal investigations which prompted us in *Matter of a Grand Jury Subpoena* to require the custodian to incur contempt as a predicate to appeal. Again, a third party claiming a privilege in subpoenaed documents may obtain judicial review when and if he or she faces a criminal indictment.

Although we hold that Doe has no standing to bring this appeal, we address his argument that the motion judge violated the Uniform Act. We have not hesitated to reach the merits of controversies improperly brought before this court when necessary to provide practical guidance to lower courts or to further the public interest. See *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 274 (1978) (mootness). Cf. *Reilly* v. *School Comm. of Boston,* 362 Mass. 689, 694-695 (1972). The issue presented in this appeal is likely to arise again in future cases. Thus, we now turn to a discussion of Doe's claim that the motion judge improperly relied exclusively on conclusions set forth in the Rhode Island certificate to support his finding that Bates is a material and necessary witness in the grand jury investigation.

The Uniform Act was adopted in September, 1931, by the National Conference of Commissioners on Uniform State

Laws. See 11 U.L.A. 2, Commissioners' Prefatory Note
(Master ed. 1974). Prior to that time, ten States already had
statutes setting out procedures for securing the attendance of
out-of-State witnesses.[6] *Id.* at 3. Law enforcement officers
long had argued for the adoption of a uniform statute that
would extend these procedures to every State, and the Uni-
form Act was designed to meet this need. *Id.* at 2. All fifty
States, as well as the District of Columbia, Puerto Rico, and
the United States Virgin Islands, now have adopted it. See
11 U.L.A. 1-2 (Master ed. & Supp. 1992).

In Massachusetts, the Uniform Act was approved on April
16, 1937. *Id.* at 1. See G. L. c. 233, §§ 13A-13D (1990 ed.).
The Act sets out the procedures for compelling an out-of-
State witness to attend a criminal proceeding in Massachu-
setts, and for compelling a Massachusetts witness to attend a
similar proceeding in another State. See *Commonwealth* v.
*Steinberg*, 404 Mass. 602 (1989). These procedures apply to
the production of witnesses as well as to the issuance of sub-
poenas for documents. *Application of a Grand Jury of N.Y.*,
8 Mass. App. Ct. 760 (1979). The procedures for compelling
Massachusetts residents to participate in out-of-State investi-
gations are as follows. Initially, a judge of the requesting
State must certify that a criminal proceeding or a grand jury
investigation is pending in that State. The foreign judge must
also certify that a Massachusetts resident is a material and
necessary witness. G. L. c. 233, § 13A. After receiving the
out-of-State certificate, a judge of the Massachusetts Supe-
rior Court must hold a hearing to determine whether compel-
ling the witness's attendance will cause him or her undue
hardship and to determine whether the Massachusetts wit-
ness is "material and necessary" to the out-of-State pro-
ceeding.

The crux of Doe's appeal is his contention that, when de-
termining whether a local witness is material and necessary,

---

[6]These States included Massachusetts, as well as Connecticut, Iowa,
Maine, New Hampshire, New York, Rhode Island, South Dakota, Ver-
mont, and Wisconsin.

the Massachusetts judge may not rely solely on the conclusions of a certificate issued by a judge of a sister State.[7]

In discussing this question, we are mindful of our duty to construe the Uniform Act in such manner as would "make uniform the law of the States which enact similar laws." G. L. c. 233, § 13D (1990 ed.). Unfortunately, the few State courts that already have addressed this issue have disagreed. See Annot., Sufficiency of Evidence to Support or Require Finding that In-State Witness in Criminal Case is "Material and Necessary" Justifying Issuance of Summons Directing Attendance of Witness Under Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, 12 A.L.R. 4th 771, 775-777 (1982 & Supp. 1991). In some jurisdictions, local judges must make independent findings of materiality and may not rely solely on foreign certificates of materiality. The Appellate Court of Illinois, for instance, held that a mere conclusion of materiality in an out-of-State certificate has no evidentiary value in the local courts. *In re Grothe*, 59 Ill. App. 2d 1, 8 (1965). Local judges, the court ruled, may treat an out-of-State certificate of materiality as prima facie evidence of the *facts* it contains. *Id.* If these facts do not provide sufficient support for the conclusion of materiality, however, the local court must hear additional evidence and make an independent determination. See *New Jersey v. Bardoff*, 92 A.D.2d 890, 891 (N.Y. 1983). Likewise, the Supreme Court of Vermont has held that a trial court may not rely solely on an out-of-State certificate, but rather must make an independent finding of materiality and necessity. *In re Stoddard*, 144 Vt. 6 (1983).

Courts of other jurisdictions have come to the opposite conclusion. These courts have held that a mere assertion of materiality in an out-of-State certificate provides sufficient

---

[7]While the Rhode Island certificate states that Bates is a material witness, it does not actually state that Bates is necessary to the grand jury proceeding. In the hearing below, the Massachusetts judge inferred from the subpoena itself that Bates is necessary. Our discussion of the extent to which a Massachusetts judge may rely on foreign certificates applies to conclusions of necessity as well as to conclusions of materiality.

evidence to support a finding of materiality by a local judge. See *In re Cooper*, 127 N.J.L. 312 (1941); *Ex parte Armes*, 582 S.W.2d 434, 439 (Tex. Crim. App. 1979). Accord *Epstein* v. *New York*, 157 So. 2d 705, 707 (Fla. Dist. Ct. App. 1963). These courts concluded that the Uniform Act's purpose is to eliminate the jurisdictional restraints that impede the effective enforcement of the criminal laws. They reasoned that requiring the requesting State to relitigate the materiality issue in the local courts would not promote this purpose. *In re Cooper, supra. Ex parte Armes, supra* at 438. Questions of materiality of a witness should be left to the requesting State, these courts also noted, as the requesting State is the forum where the investigated matter will eventually come to trial. *In re Cooper, supra* at 313-314.[8]

We think that the decisions allowing local judges to rely on a certificate of materiality signed by an out-of-State judge best further the over-all goal of the Uniform Act. The Uniform Act is designed to create a "common market" in which the several States make available to each other individuals whose testimony or records may be needed for effective law enforcement. In other words, the Uniform Act creates a single jurisdiction for purposes of compelling the attendance of witnesses and the production of records in such criminal proceedings. We must refrain from construing the Uniform Act in a restrictive manner if so doing would defeat this goal. See *Application of the Grand Jury of N.Y.*, 8 Mass. App. Ct. 760, 766 (1979).

Giving deference to the judicial determinations of another State furthers the goal of creating a single jurisdiction. By "lend[ing] the dignity of evidence to the facts stated in the properly authenticated documents of the sister state," we promote comity between the States and foster cooperation.

---

[8]Doe argues that these courts were presented with sufficient evidence to determine materiality, and he intimates that the courts would not have reached the result they did in the absence of such evidence. However, we read these cases to stand for the proposition that a court of the forwarding State has the discretion to rely solely on the conclusion of materiality of a requesting court to support its finding of materiality.

*Epstein, supra* at 707. Relitigating anew the materiality of a witness in the requested State, on the other hand, hinders the efficiency of the Uniform Act and contributes to the erection of barriers between States. *Ex parte Armes, supra* at 438.

We note, by way of analogy, that the Uniform Act fulfils a purpose similar to that of the Uniform Criminal Extradition Act, G. L. c. 276, §§ 11-20R (1990 ed.), and that our holding conforms to the judicial constructions of the Extradition Act. The Extradition Act provides a summary executive procedure which purports to enlarge the territorial area for a lawful arrest. See *Maldonado, petitioner*, 364 Mass. 359 (1973). Courts have construed the provisions of the Extradition Act in a manner that precludes a person who offended the laws of a State from finding permanent asylum in another State. See *Glenn* v. *Baker*, 184 Colo. 211 (1974). With respect to the weight given to a finding made in a sister State under the Extradition Act, we have held that a Massachusetts court need not go beyond a facial review of the documents stating that a foreign judge has found probable cause to arrest a fugitive located in Massachusetts. *Consalvi, petitioner*, 376 Mass. 699, 702 (1978). Thus, we give a high degree of trust to a foreign State's determination that a fugitive located in Massachusetts lawfully may be extradited. Likewise, we trust that our sister States will determine the materiality of witnesses located in Massachusetts as wisely as the courts of this Commonwealth would.

Cases involving grand jury subpoenas of documents, rather than straightforward requests for the production of a witness, present additional reasons for not requiring a relitigation of a foreign finding of materiality. Grand jury proceedings are secret in nature. Prosecutors and criminal defendants who petition a local judge for a certificate of materiality do so ex parte in order to protect this secrecy. See *Commonwealth* v. *Steinberg*, 404 Mass. 602 (1989). Were we to require an adversarial relitigation of the materiality issue in the requested State, we would force prosecutors either to disclose the nature of the grand jury investigation to their opponents in an adversarial proceeding or to forgo the testimony or evidence

of a witness. We would, in turn, also risk prejudice to criminal defendants because they might have to expose their defense strategies to the prosecutors.

Doe intimates that not requiring a relitigation of the materiality issue renders the Uniform Act unconstitutional as violative of substantive due process. On this issue as well, Doe has no standing to be heard. Nonetheless, we note that his constitutional argument must fail. In *New York* v. *O'Neill*, 359 U.S. 1 (1959), the Supreme Court upheld the constitutionality of the Florida enactment of the Uniform Act. The Court rejected arguments that the Uniform Act is an undue burden on the right of citizens to travel or that it violates the due process clause of the Fourteenth Amendment to the United States Constitution. The Court found that the federalist framework of the United States does not preclude States from adopting reciprocal legislation toward the achievement of lawful ends. *Id.* at 11. Once a State adopts the Uniform Act, the Court said, a "citizen cannot shirk his duty, no matter how inconvenienced thereby, to testify in criminal proceedings and grand jury investigations." *Id.* Further, State courts that have construed the Uniform Act as we do today also have upheld its constitutionality. See *In re Cooper*, 127 N.J.L. 312 (1941).

In *O'Neill*, *supra*, the United States Supreme Court did require that, "[b]ecause of the generous protections to be accorded a person brought or summoned before the court of the [requested] State, procedural due process in the hearing itself must be accorded . . . ." *Id.* at 8. Our holding today does not deprive Bates of procedural due process in any way. Bates could have moved to quash the subpoena that was directed to him, thereby obtaining a full hearing of all the substantive protection afforded to him by the Uniform Act. At this hearing, Bates could have attempted to show that travelling to Rhode Island would cause him undue hardship. As to the issues of materiality and necessity, while our conclusion today allows the motion judge to rely on a foreign certificate in considering this issue, he or she retains the discretion to refuse to do so in appropriate circumstances. See *Common-*

*wealth* v. *Watkins*, 375 Mass. 472, 488-489 (1978). Thus, Bates could have argued below that he is not a material and necessary witness to the Rhode Island prosecution. The Uniform Act as we interpret it today, therefore, does not deprive Bates of his procedural right to obtain an appropriate hearing of the substantive protection to which the Uniform Act entitles him.[9]

In sum, we hold that an investigated person or other entity has no standing to intervene to move to quash a subpoena served on a third party. We also conclude that a Massachusetts judge may choose to rely on a foreign certificate's statement that an in-State witness is material in making a determination of materiality and necessity. The motion judge's order is affirmed, and Bates will surrender the subpoenaed documents to a representative of the Rhode Island grand jury. The stay issued by the single justice of the Appeals Court is vacated. The rescript of this court will issue forthwith.

*So ordered.*

---

[9]Neither does the Uniform Act deprive Bates of substantive due process. People may not shirk their duty to cooperate with law enforcement officials engaged in the difficult task of ferreting out crime on account of mere inconvenience. *United States* v. *O'Neill*, 359 U.S. 1, 11 (1959). The disruption of Bates' daily life caused by the subpoena was minimal. Bates was granted a full reimbursement of all his expenses as well as protection against service of civil and criminal process while in Rhode Island. Further, Bates was given the choice to turn the documents over to a representative of the grand jury in lieu of travelling in person. These protections preclude any claim that the Uniform Act, as applied, violates Bates' substantive due process rights. See *In re Cooper*, 127 N.J.L. 312 (1941).