NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13336

IN THE MATTER OF A MOTION TO COMPEL.


         Worcester.     May 3, 2023. - September 18, 2023.

    Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
                       & Georges, JJ.


Uniform Act to Secure Attendance of Witnesses from Without a
     State in Criminal Proceedings.  Privileged Communication.
     Practice, Criminal, Attendance of witnesses.  Witness,
     Compelling giving of evidence, Privilege.  Evidence,
     Privileged record.  Statute, Construction.  Public Policy.



     Motion to compel attendance filed in the Superior Court
Department on January 12, 2022.

     The motion was heard by J. Gavin Reardon, Jr., J.; a motion
for reconsideration was also heard by him; and the case was
reported by him to the Appeals Court.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Anthony J. Cichello (Allison Lennon also present) for the
respondent.
     Anthony Mirenda, Laura D. Gradel, & Adam Aguirre, for
Victim Rights Law Center & others, amici curiae, submitted a
brief.
     Andrea C. Kramer, Jamie Ann Sabino, Nicole R.G. Paquin,
Samantha Jandl, & Tara Thigpen, for Women's Bar Association of
Massachusetts & another, amici curiae, submitted a brief.

GEORGES, J.  This case concerns an order issued by a Superior Court judge compelling the production of sexual assault counselling records pursuant to a certificate issued by a magistrate of the Rhode Island Superior Court (Rhode Island court or Rhode Island magistrate) under the Uniform Law to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, G. L. c. 233, §§ 13A-13D (Uniform Act). The order is challenged by the record holder, the keeper of records at a rape crisis center (center).  The essential question is whether the Massachusetts judge erred in declining to analyze the sexual assault counsellor's privilege, provided in G. L. c. 233, § 20J, when conducting his analysis under the Uniform Act.[1]  Relying on this court's decision in Matter of a

---

[1] In relevant part, the Uniform Act provides that when presented with a complying certificate from an out-of-State court, a Superior Court judge shall compel the designated witness to attend the out-of-State proceeding.  See G. L. c. 233, § 13A.  To comply with the Uniform Act, the certificate must certify that the witness is material and that his or her presence is required.  See id.; Matter of a R.I. Grand Jury Subpoena, 414 Mass. 104, 112 (1993).  The Massachusetts judge then determines (a) whether "the witness is material and necessary," and (b) whether it will "cause undue hardship" to compel the witness to attend and testify.  G. L. c. 233, § 13A. See Matter of a R.I. Grand Jury Subpoena, supra.

In the absence of a victim's "prior written consent," G. L. c. 233, § 20J, prevents a "sexual assault counsellor" from disclosing "information transmitted in confidence by and between a victim of sexual assault and a sexual assault counsellor," and further, it provides that such information "shall not be subject

R.I. Grand Jury Subpoena, 414 Mass. 104, 109 (1993) (R.I. Grand Jury Subpoena), the Massachusetts judge concluded that the privilege claim must instead be raised in Rhode Island.

To best harmonize the Uniform Act with G. L. c. 233, § 20J, we deem it necessary for either the requesting State or Massachusetts to adjudicate a request for Massachusetts sexual assault counselling records in accordance with the Lampron-Dwyer protocol.[2]  See Commonwealth v. Dwyer, 448 Mass. 122, 139-147 (2006); id. at 147-150 (Appendix); Commonwealth v. Lampron, 441 Mass. 265, 269-270 (2004).  The Superior Court judge reached this same conclusion in his initial order, and but for his reliance on the general rule articulated in R.I. Grand Jury Subpoena, 414 Mass. at 109, he would have correctly applied the Lampron-Dwyer protocol in ultimately deciding the issue.  On his report of this issue of first impression, we clarify the applicable standard.

Specifically, we hold that this Commonwealth's strong and clear public policy in favor of protecting victims of sexual assault compels an exception to the otherwise applicable general

---

to discovery and shall be inadmissible in any criminal or civil proceeding."

[2] We note that certain amendments to the Uniform Act and G. L. c. 233, § 20J, took effect during the pendency of this case.  See St. 2022, c. 127, § 36; St. 2022, c. 175, §§ 48A, 55. Those changes are not at issue here.

rule of R.I. Grand Jury Subpoena, 414 Mass. at 109, that under the Uniform Act, privilege claims should be litigated in the requesting jurisdiction. This exception is specific to records or testimony presumptively privileged by § 20J, and it applies only where an objecting party establishes a substantial likelihood that the protections of the § 20J privilege, as expressed in the Lampron-Dwyer protocol, will be abrogated in the requesting State. If such a substantial likelihood exists, then a Massachusetts judge must ensure that records or testimony presumptively privileged by § 20J will receive the protections of the Lampron-Dwyer protocol before authorizing a subpoena under the Uniform Act. Applying this standard here, we vacate the order of the Superior Court judge.[3],[4]

---

[3] We are informed by the center in a postargument letter that the underlying Rhode Island criminal case was dismissed during the pendency of this appeal. The center concedes that this development could be grounds to deem this matter moot. Nevertheless, "[i]t is within the discretion of this court to review a case regardless of its mootness." Commonwealth v. McCulloch, 450 Mass. 483, 486 (2008). While it would appear that this matter is moot, we exercise that discretion to decide the issue presented by the judge's report because it is an issue of significant public importance about which there is some uncertainty. See id.; Brown v. Guerrier, 390 Mass. 631, 633 (1983) ("The fact that a judge has reported the case is entitled to weight in deciding whether to exercise our discretion in favor of answering substantive questions").

[4] We acknowledge the amicus brief submitted by the Victim Rights Law Center, Jane Doe, Inc., Boston Area Rape Crisis Center, Center for Hope and Healing Inc., New Hope, Inc., Pathways for Change, Inc., Elizabeth Freeman Center, Inc., Independence House, Inc., and National Women's Law Center, as

Background.  The petitioner[5] was charged by the State of Rhode Island with child molestation.[6]  The center has represented -- and the Superior Court judge assumed in reaching his decision -- that the alleged victim, a minor, was receiving counselling at the center, and that the alleged victim's counsellor there was a sexual assault counsellor.  The center states that this counselling is ongoing.

A Rhode Island magistrate issued a certificate pursuant to the Uniform Act seeking to obtain from the center the alleged victim's medical records from a specific date to the present. The certificate described the magistrate's conclusions that the keeper of the records for the center was "a material witness" in the Rhode Island criminal case and that "the documents that []he will bring with h[im] are relevant to the trial . . . and necessary for the presentation of a defense."  In particular, the Rhode Island magistrate concluded that "upon information and

---

well as the amicus brief submitted by the Women's Bar Association of Massachusetts and the Massachusetts Law Reform Institute.

[5] We refer to the party who sought the records as the petitioner, as that was the party's designation in the Superior Court.

[6] Specifically, he was charged with one count of "first degree child molestation sexual assault" pursuant to R.I. Gen. Laws §§ 11-37-8.1 and 11-37-8.2, as well as three counts of "second degree child molestation sexual assault" pursuant to R.I. Gen. Laws §§ 11-37-8.3 and 11-37-8.4.

belief, said witness would give evidence and testimony relating to an alibi," and further, that "the witness can provide evidence and testimony that would be material and relevant to the defenses of, inter alia, the alibi generally as well as impeachment and exculpatory evidence."

One month later, the petitioner filed the certificate along with a motion to compel in the Superior Court. A hearing was then held at which the center appeared and opposed the motion to compel. After the hearing, the center filed a written opposition and the petitioner filed a supplemental memorandum in support of his motion to compel. The Superior Court judge issued an order denying the motion to compel without prejudice. He noted the center's objections based on G. L. c. 233, § 20J, and cited a lack of information as to whether Rhode Island would afford protections similar to those provided in Massachusetts. On that basis, he concluded that requiring the appearance of the record-keeper would be an undue hardship. The judge suggested that his concerns would be satisfied by either a hearing pursuant to the Lampron-Dwyer protocol in the Superior Court or a showing that the equivalent was held in Rhode Island.

One month later, a second magistrate of the Rhode Island court issued an order that the records at issue "shall be viewed in camera by the Judge/Magistrate before any documents are turned over to counsel." The petitioner presented this order to

the Superior Court in a motion for reconsideration, urging that it answered the Superior Court judge's concerns.  The center opposed the motion for reconsideration, and a hearing was held, at which the center argued that the Lampron-Dwyer protocol had not been met, either in Rhode Island or before the Superior Court.  The center emphasized, as it had in its prior opposition, that it received no notice of the Rhode Island proceedings.  The Superior Court judge noted his concern about the lack of notice to the center and expressed reservations about whether the requirements of Lampron-Dwyer had been met.

Relying on this court's decision in R.I. Grand Jury Subpoena, 414 Mass. at 109, however, the Superior Court judge issued an order in which he concluded that the privilege issue must be litigated in the requesting State, Rhode Island.  Consequently, he "limit[ed] [his] analysis to the considerations set forth under" the Uniform Act.  Without analyzing the privilege for sexual assault counselling records under § 20J, the Superior Court judge concluded that the showings of materiality and necessity as required by the Uniform Act were established in the certificate and that compelling attendance did not give rise to undue hardship.  See R.I. Grand Jury Subpoena, supra at 108 n.4.  He allowed the motion to compel but stayed his order for fourteen days.  The order subsequently was stayed further on the center's motion.

The Superior Court judge again further stayed his order and all proceedings, and he reported his order to the Appeals Court pursuant to G. L. c. 231, § 111, and Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), or, in the alternative, Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). After the appeal had been entered in the Appeals Court, this court granted the center's application for direct appellate review.[7]

Discussion. 1. Standard of review. Where a Superior Court judge reports an interlocutory order for determination by an appellate court, "the basic issue . . . is the correctness of his [or her] finding or order" (citation omitted). Graycor Constr. Co. v. Pacific Theatres Exhibition Corp., 490 Mass. 636, 640 (2022). The crux of the instant dispute is a question of law, that is, whether and to what extent a Massachusetts court must consider G. L. c. 233, § 20J, in analyzing a request made under the Uniform Act for sexual assault counselling evidence located in Massachusetts. We review de novo such questions. See Emma v. Massachusetts Parole Bd., 488 Mass. 449, 453 (2021).

2. The Uniform Act. We begin with the overarching framework of the Uniform Act, which applies to requests for in-person testimony as well as document requests. See R.I. Grand Jury Subpoena, 414 Mass. at 112. In relevant part, the Uniform

---

[7] The petitioner did not file a brief or appear for oral argument before this court.

Act requires that when presented with a complying certificate from an out-of-State court, a justice of the Superior Court in Massachusetts shall compel the designated witness to attend the out-of-State proceeding. See G. L. c. 233, § 13A. To comply with the Uniform Act, the certificate must, inter alia, certify that the witness is material and that his or her presence is required. See id.; R.I. Grand Jury Subpoena, supra. In Massachusetts, the Superior Court judge receiving such a certificate is directed to hold a hearing to "determine[]" (a) whether "the witness is material and necessary," and (b) whether it will "cause undue hardship" to compel the witness to testify. G. L. c. 233, § 13A. See R.I. Grand Jury Subpoena, supra.

3. G. L. c. 233, § 20J. Massachusetts State law privileges "information transmitted in confidence by and between a victim of sexual assault and a sexual assault counsellor."[8] G. L. c. 233, § 20J. It provides in relevant part that "[a] sexual assault counsellor shall not disclose such confidential communication, without the prior written consent of the victim," and further, that "[s]uch confidential communications shall not be subject to discovery and shall be inadmissible in any

---

[8] General Laws c. 233, § 20J, further defines the terms "victim" and "sexual assault counsellor." The center has represented that those definitions are met in this case, and the petitioner did not dispute that before the Superior Court.

criminal or civil proceeding without the prior written consent of the victim to whom the report, record, working paper or memorandum relates."[9]  Id.

a.  Interpretation.  The text of § 20J shows the Legislature's intention that the sexual assault counselling privilege have "the widest scope possible."  Commonwealth v. Neumyer, 432 Mass. 23, 33 (2000).  See Commonwealth v. Two Juveniles, 397 Mass. 261, 265-266 (1986).  The "demonstrated legislative concern for the inviolability of the privilege" corresponds to the importance of the public policy purposes that it serves.  See Commonwealth v. Fuller, 423 Mass. 216, 225 (1996), overruled on other grounds by Dwyer, 448 Mass. at 139. We have explained this "policy of the Commonwealth" in the following terms:  "Because victims of sexual crimes are likely to suffer a depth and range of emotional and psychological disturbance . . . not felt by the victims of most other crimes, the public interest lies in assisting victims of sexual crimes to recover from injuries" (quotation and citation omitted). Commonwealth v. Stockhammer, 409 Mass. 867, 884 (1991).  Cf. G. L. c. 233, § 21B (rape shield statute); St. 1977, c. 110, preamble (purpose of rape shield statute is "to protect . . .

_____

[9] The center represented to the Superior Court judge that the alleged victim objected to the request at issue.

victims of rape and certain other related crimes"); <u>Commonwealth</u> v. <u>Harris</u>, 443 Mass. 714, 723 (2005).

Section 20J advances this policy. It "reflects, among other considerations, the personal and intimate nature that records of sexual assault counselling will almost certainly possess." <u>Fuller</u>, 423 Mass. at 221. And it permits a sexual assault victim to have "confidence and trust in the counsellor who hears [his or her] disclosures." <u>Id</u>. at 222 n.4. Without this, a victim "may not feel able to make full disclosure" or "may forgo altogether the benefits of counselling." <u>Id</u>. at 221. By privileging these communications and related records, § 20J addresses these concerns, promoting aid to sexual assault victims and encouraging the reporting of sexual assault crimes, which otherwise might go unreported. See <u>id</u>. at 221-222 & n.4.

b. <u>Lampron-Dwyer protocol</u>. "With the existence and strength of the privilege established by the Legislature, the only issue left for judges" is whether a defendant's constitutional rights are implicated. <u>Two Juveniles</u>, 397 Mass. at 266. The <u>Lampron</u>-<u>Dwyer</u> protocol protects the constitutional rights of defendants while preserving the strength of statutory privileges. It "represent[s] a careful balancing[,] . . . establish[ing] not only that a statutory privilege sometimes must yield to a defendant's need for information to mount a defense and thus obtain a fair trial, but also that, in such

circumstances, the intrusion must be made with great care and pursuant to exacting procedures."  Matter of an Impounded Case, 491 Mass. 109, 118 (2022).

Under the protocol, sexual assault counselling records are presumptively privileged.  See Dwyer, 448 Mass. at 143 n.25, 148.  To obtain access to such records,

> "[t]he party moving to [summons] documents . . . must establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."'"

Id. at 140-141, quoting Lampron, 441 Mass. at 269.  The party must first move the court, "describing, as precisely as possible, the records sought," and detailing in an affidavit "all facts relied upon in support of the motion."  Dwyer, supra at 147 (Appendix); Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).  We emphasize that notice to the record holder is an essential part of the Lampron-Dwyer protocol, and this notice must be provided in advance of the Lampron hearing, as the record holder is entitled to be heard before the issuance of any summons not only on the question of privilege but also on the question of relevance.  See Dwyer, 448 Mass. at 145; id. at 148 (Appendix).

At the Lampron hearing, the judge "shall [then] hear from all parties, the record holder, and the third-party subject, if present." Id. at 148 (Appendix). After this hearing, the judge will make oral or written findings as to whether the moving party met its initial burden. See id. at 148 & n.3 (Appendix). Moreover, the judge will make oral or written findings as to whether the records at issue are presumptively privileged, i.e., "prepared in circumstances suggesting that some or all of the records sought are likely protected by a statutory privilege." See id. at 148 (Appendix).[10]

To the extent that the burden is met but "some or all of the requested records are presumptively privileged," id. at 149 (Appendix), the moving party will obtain access to those records subject to a number of procedural safeguards. Any summons issued pursuant to the Lampron-Dwyer protocol shall be limited to the relevant portions of the records at issue. See Lampron, 441 Mass. at 269 n.6. And the presumptively privileged records summonsed shall be kept by the clerk under seal. Dwyer, 448 Mass. at 146; id. at 149 (Appendix). Inspection is permitted only by "counsel of record" for the moving party, who shall sign a protective order "containing stringent nondisclosure

---

[10] It is understood that the judge will not have reviewed the records in camera before making those findings. See Dwyer, 448 Mass. at 148 n.3 (Appendix).

provisions," the violation of which subjects the attorney to disciplinary action.[11]  Id. at 146.  "Among other things, the protective order shall prohibit counsel from copying any record or disclosing or disseminating the contents of any record to any person, including the defendant."  Id.  Disclosure is "permitted if, and only if, a judge subsequently allows a motion for a specific, need-based written modification of the protective order."  Id.  The judge may modify the protective order only after a motion and hearing and must make oral or written findings that the copying or disclosure of presumptively privileged records is "necessary for the defendant to prepare adequately for trial."  Id. at 150 (Appendix).  Even so, the judge must "consider alternatives to full disclosure."  Id. Where the records are disclosed pursuant to a court order following this procedure, any recipient of the information must sign a copy of the order, which "shall clearly state that a violation of its terms shall be punishable as criminal contempt."  Id.  Such records may be introduced at trial only after a motion in limine, which may be allowed after a finding that introduction is "necessary for the moving defendant to obtain a fair trial" and only after consideration of

---

[11] Counsel can later bring a motion to challenge any such privilege designation.  See Dwyer, 448 Mass. at 149-150 (Appendix).

alternatives. Id. All copies of the records must be returned to the court upon resolution of the case. See id.

4. Application. In R.I. Grand Jury Subpoena, this court explained that under the Uniform Act, privilege issues are "a matter for the requesting jurisdiction to rule on and are not appropriately addressed to the [S]tate court issuing the subpoena." R.I. Grand Jury Subpoena, 414 Mass. at 109, quoting Tracy v. Superior Court, 168 Ariz. 23, 43 (1991). Today, we acknowledge the continuing validity of that general rule. Nevertheless, we hold that this Commonwealth's strong and clear public policy in favor of protecting victims of sexual assault compels an exception to this rule. This exception is specific to records or testimony presumptively privileged by G. L. c. 233, § 20J. To receive the protection of the exception, the burden is on an objecting party to establish a substantial likelihood that the protections of the § 20J privilege, as expressed in the Lampron-Dwyer protocol, will be abrogated in the requesting State. In determining whether this burden has been met, the Massachusetts judge may look to the law of the requesting State and may rely on representations in the certificate from the out-of-State court as to the means by which it will protect the information.

If the objecting party's burden is met, the Massachusetts judge must ensure that the records or testimony presumptively

privileged by § 20J will receive the protections of the <u>Lampron-Dwyer</u> protocol before authorizing a subpoena for such information under the Uniform Act.  To accomplish this, a Massachusetts judge may implement the full <u>Lampron</u>-<u>Dwyer</u> protocol, or relying on the applicable law and representations of the out-of-State court that certain parts of the <u>Lampron-Dwyer</u> protocol will be fulfilled by the out-of-State proceedings, the judge may implement the parts of the protocol that will not otherwise be fulfilled.  See <u>R.I. Grand Jury Subpoena</u>, 414 Mass. at 114.  Because notice to the record holder is such an important part of the <u>Lampron</u>-<u>Dwyer</u> protocol, however, we caution against reliance upon facts or conclusions established without such notice.

In reaching this decision, we are persuaded by the analysis of the New York Court of Appeals in <u>Holmes</u> v. <u>Winter</u>, 22 N.Y.3d 300, 316 (2013), cert. denied, 572 U.S. 1135 (2014).  In that case, the court reaffirmed the principle that privilege issues should be litigated in the requesting State but nevertheless created an exception to that rule based on the strong and clear public policy of the State of New York, embodied in an absolute privilege protecting a journalist's confidential sources.  See <u>id</u>. at 303, 313-320.  The requesting State, Colorado, did not provide the same protection, and so in light of the public policy, the court found that a journalist was entitled to have

the privilege issue litigated in New York.  See id. at 305, 314-316.  The Court of Appeals stressed, as we stress today, the limited nature of the holding.  See id. at 318, 319.  The issue we decide is "whether a [Massachusetts] court should issue a subpoena compelling a [Massachusetts rape crisis center record keeper] to appear as a witness in another [S]tate to give testimony when such a result is inconsistent with the . . . protection of [§ 20J].  Thus, the narrow exception we recognize today . . . is not tantamount to giving a [Massachusetts] law extraterritorial effect," and does not offend principles of comity.  Id.  See People v. Marcy, 91 Mich. App. 399, 405, 407 (1979) (affirming denial of petition from out-of-State court seeking testimony within Michigan's statutory polygrapher privilege and attorney-client privilege).

The State of Rhode Island does not specifically privilege sexual assault counselling records.  Cf. Advisory Opinion to the House of Representatives, 469 A.2d 1161, 1163, 1166 (R.I. 1983).  Rhode Island law protects against the disclosure of health care records, but there are material differences between Rhode Island's protections and those afforded under the Lampron-Dwyer protocol.  See R.I. Gen. Laws § 5-37.3-6.1.

First, the Rhode Island statute provides for advance notice to the subject of the records and not to the record holder.  See id.  In Massachusetts, by contrast, "[a]s keeper of the records,

and the entity to whom the [request is] addressed, [a rape crisis center] has the obligation to assert the privilege provided by § 20J on behalf of its clients." Fuller, 423 Mass. at 220 n.3. Here, the center represents that it received no notice of any proceedings in Rhode Island, and the language of R.I. Gen. Laws § 5-37.3-6.1 suggests that no such advance notice is required. The Superior Court judge initially expressed specific concern about this lack of notice to the center. As described above, advance notice to the record holder is a crucial part of the Lampron-Dwyer protocol. Therefore, to the extent that the center did not receive notice of the Rhode Island proceedings, we would caution against using facts determined therein to satisfy the Lampron-Dwyer protocol.

Second, in camera review is not by itself sufficient protection for information presumptively privileged under § 20J. Here, a magistrate of the Rhode Island court ordered in camera review by a judge or magistrate before any documents would be turned over to counsel. But disclosure even to a judge is nevertheless a disclosure and one that our protocol strictly limits. See Dwyer, 448 Mass. at 146; id. at 148-149 & n.3 (Appendix); Fuller, 423 Mass. at 225-226 ("disclosure, even in the limited form of an in camera inspection, should not become the general exception to the rule of confidentiality"); Commonwealth v. Bishop, 416 Mass. 169, 178 (1993), overruled on

other grounds by Dwyer, 448 Mass. at 139. Therefore, the magistrate's order providing for in camera review was not sufficient in itself to cure any deficiency in the Lampron-Dwyer protocol.

Third and most important, Rhode Island law does not require the stringent nondisclosure provisions of Lampron-Dwyer. If the Rhode Island court decided to release records subject to the privilege, Rhode Island law would not require the clerk to retain them under seal, would not require a protective order prohibiting the copying or disclosure of their contents as described above, and would not require that a violation be reported to a disciplinary authority. See Dwyer, 448 Mass. at 146; id. at 149 (Appendix). Neither would Rhode Island law impose the same prerequisites for further copying or disclosure, including the requirement that such copying or disclosure be found "necessary" for the defendant to prepare for trial or else to preserve his right to a fair trial, and the requirement that recipients of such further disclosures be subject to criminal contempt penalties for any violation of the relevant order. Id. at 146; id. at 150 (Appendix).

It does appear that a judge of the Rhode Island court has discretion to impose such protections, but they are not required as in Massachusetts. Compare Dwyer, 448 Mass. at 139-150, with DePina v. State, 79 A.3d 1284, 1289-1290 (R.I. 2013) (describing

balancing test required on third-party subject's motion to quash), and State v. Burnham, 58 A.3d 889, 892-893, 896-899 & n.10 (R.I. 2013) (noting discretionary disclosure to parties' attorneys of alleged victim's mental health records in child molestation case). See Holmes, 22 N.Y.3d at 315 (finding out-of-State balancing test to provide insufficient protection).

In sum, we conclude that the protections afforded by the State of Rhode Island, while not insubstantial, do not ensure the stringent nondisclosure protections of this State's Lampron-Dwyer protocol. Therefore, as there was a substantial likelihood that the privilege would be abrogated in this respect under Rhode Island law, a Superior Court judge needed to ensure compliance with the Lampron-Dwyer protocol before ordering the release of Massachusetts sexual assault counselling records to the Rhode Island court.[12]

Conclusion. For the foregoing reasons, we vacate the order allowing the motion to compel.

So ordered.

---

[12] We note with appreciation the Rhode Island court's willingness, expressed in the certificate, "to enter an Order directing compliance with all reasonable terms and conditions prescribed by a Court of record in the Commonwealth of Massachusetts having jurisdiction over[] [the witness] regarding h[is] appearance."