IN THE MATTER OF A GRAND JURY SUBPOENA.

Suffolk. September 5, 1991. - January 2, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Grand jury proceedings. *Grand Jury. Subpoena. Accountant. Witness*, Subpoena.

Interlocutory appellate review was not available to address the merits of the denial of motions by a corporation and its accounting firm to quash a grand jury subpoena served upon the accounting firm, inasmuch as an appeal from an adjudication of contempt, as well as the protections afforded in the trial process, were available to protect the rights of the parties. [492-499]

A judge of the Superior Court had authority to require the Commonwealth to reimburse an accounting firm for its expenses in producing the documentary evidence required by a grand jury subpoena, and, on remand, was to afford the Commonwealth a hearing as to the reasonableness of the amount claimed. [499-502]

MOTIONS filed in the Supreme Judicial Court for the county of Suffolk on April 25, 1990, and April 30, 1990.

On transfer to the Superior Court Department the proceedings were heard by *Hiller B. Zobel*, J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Janis M. Berry* (*Jonathan M. Zorn* with her) for Howmet Corporation.

*Ian Crawford* for Price Waterhouse.

*Andrew M. Zaikis*, Assistant Attorney General, for the Commonwealth.

ABRAMS, J. We allowed the application of Howmet Corporation (Howmet) for further appellate review to consider whether an interlocutory appeal is available to Howmet from the denial of its motion to quash a subpoena directed to and served on its accounting firm, Price Waterhouse, at Price

Waterhouse's Boston office. The Appeals Court concluded that the appeal was premature. See *Matter of a Grand Jury Subpoena*, 30 Mass. App. Ct. 462 (1991). For the reasons stated in this opinion, we conclude that Howmet may not appeal from the order denying the motion to quash the subpoena. Price Waterhouse, if it wishes to appeal from the order, must first disobey the subpoena and risk contempt. Thus, Howmet's and Price Waterhouse's appeals are not properly before us and must be dismissed.

We also allowed further appellate review of the Commonwealth's cross appeal from an order requiring it to reimburse Price Waterhouse for the firm's reasonable expenses incurred in complying with the subpoena. Because that order is a final one, we reach the merits of the Commonwealth's appeal.

On April 6, 1990, the Attorney General, in connection with a grand jury investigation into possible criminal violations of Massachusetts tax laws by Howmet, served a subpoena duces tecum on Howmet's independent accounting firm, Price Waterhouse, at its Boston office. The subpoena requested that Price Waterhouse supply to the grand jury certain records in its possession or control regarding Howmet, including Federal and State tax returns. Howmet itself never was served with a grand jury subpoena. Pursuant to G. L. c. 211, § 3, Howmet and Price Waterhouse each filed motions to quash the subpoena before a single justice of this court. The single justice transferred both motions to the Superior Court.

There, Howmet filed three more motions: (1) a motion for relief in the nature of prohibition challenging the grand jury's jurisdiction; (2) a motion for an order concerning affidavits and related evidence submitted in connection with the grand jury's jurisdictional hearing; and (3) a motion for an order compelling production on subpoenas served on the Department of Revenue (department).

In the first motion, Howmet argued that its activities in Massachusetts fall within Pub. L. No. 86-272,[1] and that, therefore, it was not required to file corporate excise returns in Massachusetts and cannot be held criminally liable for not filing such returns. A Superior Court judge ordered Howmet to submit affidavits and briefs in support of this first motion, an order which formed the basis of the second motion.

In the second motion, relying on *Simmons* v. *United States*, 390 U.S. 377, 394 (1968) (Fifth Amendment to the United States Constitution bars State from using against defendant at trial potentially incriminating statements made in preliminary hearing on motion to suppress), Howmet asked the Superior Court to bar the prosecution from using these affidavits in other proceedings.

In its final motion, Howmet moved that the Superior Court compel the department to respond to four subpoenas that it, in turn, had served on the department. The subpoenas, intended to elicit information regarding the Commonwealth's jurisdiction to convene a grand jury, requested production of department records regarding the Commissioner of Revenue's (commissioner's) construction of, and standards applicable under, Pub. L. No. 86-272.[2]

The Superior Court judge denied all five motions, but directed the Commonwealth to reimburse Price Waterhouse for expenses reasonably incurred in complying with the subpoena. Pursuant to G. L. c. 211, § 3, Howmet and Price Waterhouse again commenced a joint proceeding in the Supreme Judicial Court for the county of Suffolk seeking to

---

[1]Public Law No. 86-272, codified at 15 U.S.C. §§ 381-384 (1988), prohibits States from imposing a net income-based tax on an out-of-State corporation where the corporation's in-State activities are limited to solicitation of orders for sales of tangible personal property, where the orders are sent outside the State for approval or rejection, and the orders are filled by shipment or delivery from a point outside the State.

[2]Howmet expected that the subpoenas would elicit information from the department showing that the commissioner has no governing standard concerning the applicability of Pub. L. No. 86-272, and that, therefore, any prosecution for a failure to file Massachusetts corporate excise tax returns would, on its face, violate due process on the ground of vagueness.

stay and reverse the orders of the Superior Court. The single justice denied relief in view of the potential availability of relief from the Appeals Court. Howmet then filed a petition for interlocutory relief in the Appeals Court pursuant to G. L. c. 231, § 118 (1990 ed.), seeking once again to stay and reverse the orders of the Superior Court. This petition, too, was denied by a single justice of the Appeals Court; however, he did allow Howmet's motion for leave to file an interlocutory appeal to the Appeals Court under G. L. c. 231, § 118.

After Howmet filed its appeal, Price Waterhouse filed its own appeal from the Superior Court's denial of its motion to quash, and the Appeals Court consolidated Howmet's and Price Waterhouse's appeals. The Commonwealth filed a cross appeal from that portion of the Superior Court's order directing the Commonwealth to reimburse Price Waterhouse for its costs of complying with the subpoena. On appeal, Howmet and Price Waterhouse challenge the subpoena on the merits, arguing that the subpoena (1) lacked extraterritorial effect because it failed to comply with G. L. c. 233, §§ 13A-13D (1990 ed.) (Uniform Act to Secure the Attendance of Witnesses From Without the Commonwealth in Criminal Proceedings); (2) violated the accountant-taxpayer nondisclosure privilege of G. L. c. 62C, § 74 (1990 ed.); (3) violated 26 U.S.C. § 6103 (1988), and G. L. c. 62C, §§ 21, 22 (1990 ed.) (Federal and State nondisclosure provisions regarding the confidentiality of tax information); and (4) may have violated art. 12 of the Massachusetts Declaration of Rights (prohibiting involuntary production of incriminating evidence).

1. *Howmet may not intervene to move to quash the subpoena issued to Price Waterhouse requesting Howmet documents.* In general, interlocutory orders are not appealable. See *Cronin* v. *Strayer*, 392 Mass. 525, 528 (1984); *Borman* v. *Borman*, 378 Mass. 775, 781-782 (1979). Orders denying motions to quash subpoenas, such as the one at issue in this case, are not final decisions and not appealable. The usual way of challenging such orders is to disobey them and appeal

from the subsequent contempt order. See, e.g., *Cronin* v. *Strayer, supra*; *Matter of Roche,* 381 Mass. 624, 625 n.1 (1980). Consolidating review of all the issues raised in a case in a single, comprehensive appellate proceeding, it is hoped, eliminates some delay and also fosters better informed decisions. See *Cronin* v. *Strayer, supra* at 529-530; *Cappadona* v. *Riverside 400 Function Room, Inc.,* 372 Mass. 167, 169 (1977); *DiBella* v. *United States,* 369 U.S. 121, 124 (1962); *Baltimore Contractors, Inc.* v. *Bodinger,* 348 U.S. 176, 178 (1955); *Cobbledick* v. *United States,* 309 U.S. 323, 325 (1940); *Heike* v. *United States,* 217 U.S. 423, 428-429 (1910); *McLish* v. *Roff,* 141 U.S. 661, 665-666 (1891); *Borden Co.* v. *Sylk,* 410 F.2d 843, 846 (3d Cir. 1969); *United States* v. *Fried,* 386 F.2d 691, 695 (2d Cir. 1967). Generally, we follow a policy of the nonappealability of interlocutory orders.

Federal Courts of Appeal have created an exception to the nonappealability rule in cases in which the party to whom the order to produce documents is directed cannot be expected to care enough about the arguably privileged nature of the documents to risk contempt. This exception to the rule of nonappealability of interlocutory orders is known as the "Perlman exception." See *Perlman* v. *United States,* 247 U.S. 7 (1918).

The facts of *Perlman* may be summarized as follows. A company partly owned by Perlman had submitted papers and models as exhibits in a patent infringement suit. The papers and models were impounded in the trial court as a condition to the suit's being dismissed without prejudice. Later, the United States Attorney, investigating a charge that Perlman had perjured himself during the patent trial, moved that the court issue an order directing the clerk of court to produce the exhibits before the grand jury. The motion was granted, and Perlman, claiming privileges under the Fourth and Fifth Amendments to the United States Constitution in the exhibits, sought and was denied relief from the order. The Supreme Court rejected the government's assertion that the order was interlocutory and nonappealable.

Some Federal courts construe the *Perlman* exception very broadly, holding that if a person has custody of material as to which a third party allegedly holds a privilege of nondisclosure and production of the material arguably would defeat that privilege, then the third party may intervene and appeal the order pursuant to 28 U.S.C. § 1291 (1988).[3] See, e.g., *In re Grand Jury Subpoena*, 784 F.2d 857, 859-860 (8th Cir. 1986); *Matter of Klein*, 776 F.2d 628, 630-632 (7th Cir. 1985); *In re Grand Jury Matter*, 770 F.2d 36, 38 (3d Cir. 1985); *United States* v. *(Under Seal)*, 748 F.2d 871, 873 (4th Cir. 1984); *In re Int'l Syss. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1238 n.1 (5th Cir. 1982). Howmet asks us to adopt the reasoning of these cases and to create a broad *Perlman* exception to our general rule that interlocutory rulings in criminal cases are not appealable.[4]

The line of cases creating a broad *Perlman* exception to the general rule of nonappealability, at best, are only distantly related to the *Perlman* case.[5] Unlike the attorney and accountant custodians and their clients who claim to hold a privilege in the cases cited above, the party seeking to appeal, Perlman, and the custodian of the documents at issue, a clerk of court, had absolutely *no* relationship to each other.[6]

---

[3]Section 1291 of the Judicial Code allows appeal to the Federal Courts of Appeal "from all final decisions of the district courts of the United States."

[4]Prior to this opinion, we have not been asked to apply the *Perlman* exception. Cf. *Cronin* v. *Strayer, supra* at 530 n.7 (holding that nonparty witnesses may not appeal discovery orders, but noting in dictum that *Perlman* rule is "most common exception" to "the general rule that pretrial disclosure orders are not appealable"); *Borman* v. *Borman, supra* at 783 ("*Perlman* [is] inapplicable to the case before us").

[5]See generally Comment, The *Perlman* Exception: Limitations Required by the Final Decision Rule, 49 U. Chi. L. Rev. 798 (1982) (broad reading of *Perlman* is unwarranted and violates underlying policy against interlocutory appeals). "*Perlman* route should be allowed only where the subpoenaed party is disinterested and independent of the intervenor and does not share the intervenor's privilege." *Id.* at 818.

[6]As an opinion of the United States Court of Appeals for the Second Circuit so dryly put it, "it was not only unlikely [that the clerk of court would have risked contempt for the plaintiff] but unimaginable. The only third party who could have helped [the plaintiff] was the clerk of the Dis-

There was no claim of shared privilege.[7] Those facts distinguish *Perlman* from this case.

The United States Court of Appeals for the First Circuit, holding that a client could not appeal from an order directing his attorney to testify before a grand jury with respect to communications allegedly protected by the attorney-client privilege, read *Perlman* as limited to its facts. In *Perlman*, the First Circuit pointed out, there was "*no relation* between the holder of the privilege and the person who could get a review of the contested order by defying it and risking contempt proceedings" (emphasis added), *In re Oberkoetter*, 612 F.2d 15, 18 (1st Cir. 1980), and so Perlman was truly "powerless to avert the mischief of the order." *Id.*, quoting *Perlman, supra* at 13. Other Federal circuits have similarly denied a third-party stakeholder's request to appeal when the "target of the disclosure order is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges." *National Super Spuds, Inc.* v. *New York Mercantile Exch.*, 591 F.2d 174, 180 n.7 (2d Cir. 1979). See, e.g., *Corporacion Insular de Seguros* v. *Garcia*, 876 F.2d 254, 258-260 (1st Cir. 1989); *In re Grand Jury Matter*, 802 F.2d 96, 98-99 (3d Cir. 1986); *In re Grand Jury Subpoena Served Upon Niren*, 784 F.2d 939 (9th Cir. 1986); *In re Grand Jury Proceedings, Subpoena to Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983), cert. denied, 469 U.S. 819 (1984).[8] We think that these cases

---

trict Court for the Southern District of New York and we do not exactly see that clerk defying an order of [the judge] in order to assist the target of a grand jury perjury investigation." *National Super Spuds, Inc.* v. *New York Mercantile Exch.*, 591 F.2d 174, 179 (2d Cir. 1979).

[7]Moreover, *Perlman* did not come before the Supreme Court by an appeal from an interlocutory order. It came by an appeal from a final order in an independent proceeding.

[8]The Supreme Court, although it has not yet resolved the split among the Circuit Courts of Appeal, has characterized *Perlman* as falling "within the 'limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.'" *United States* v. *Nixon*, 418 U.S. 683, 691 (1974), quoting *United States* v. *Ryan*, 402 U.S. 530, 533 (1971).

are better reasoned and that they more accurately reflect the *Perlman* exception.[9] We accordingly decline to allow Howmet to appeal from the denial of the motion to quash the subpoena served on Price Waterhouse.

Our decision ensures that appeals will be pursued only on claims serious enough to warrant the sacrifice of a finding of contempt. We believe that here, unlike *Perlman*, Price Waterhouse could be expected to defend its client's claims by risking contempt if the claims have merit; the relationship between Howmet and Price Waterhouse "provides ample incentive for the accountant to risk contempt to avoid complying with process reasonably perceived by it or by the client as overreaching." *Matter of a Grand Jury Subpoena*, 30 Mass. App. Ct. 462, 465 (1991). Self-interest, too, may well induce an accounting firm to defend any meritorious claims of its client; surrendering confidential client information without a fight is not consistent with fostering goodwill. "We also think that any meritorious claim of privilege would likely increase

---

[9]We note that a few cases have held that the client would have standing to appeal the denial of a motion to quash if the client could "prove that the [custodian] will produce the records rather than risk contempt." *In re Grand Jury Proceedings, Subpoena to Vargas, supra* at 1466. See, e.g., *In re Sealed Case*, 737 F.2d 94, 97-98 (D.C. Cir. 1984) (client could appeal because attorney in possession of documents submitted affidavit swearing he would turn over documents if ordered to do so by court rather than risk contempt); *In re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir.) (target of grand jury investigation could appeal from order denying motion to quash because custodians of records stated that they would produce the records rather than risk contempt), cert. denied sub nom. *Doe v. United States*, 493 U.S. 906 (1989); *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (client could appeal after attorneys filed affidavit stating that they would obey order to testify before grand jury rather than place themselves in contempt). We decline to adopt a rule which automatically would grant all third-party privilege holders the right to intervene and appeal production orders on the strength of the custodian's oath that the custodian will not risk contempt. Such a rule is particularly inapt in cases in which the custodian and the third party are claiming a privilege or privileges as a result of their relationship. As the Appeals Court observed, "we may expect to find mutuality of interest and a degree of interdependence, control, and loyalty" between a client and its professional custodian. *In the Matter of a Grand Jury Subpoena*, 30 Mass. App. Ct. at 465.

an accountant's incentive to resist disclosure and risk a contempt adjudication." *Id.* at 465 n.7.

Our decision generally serves the need of expedition in the grand jury process and criminal proceedings. See *Cobbledick v. United States, supra* at 325 (appellate disruption of grand jury process strongly disfavored because piecemeal disposition would lead to "leaden-footed" system and would hinder efficient administration of criminal justice system). "[M]otions to quash grand jury subpoenas duces tecum are but rarely meritorious and are most often undertaken for purposes of delay. This reality of the judicial process makes our strict observance of the requirement of finality all the more necessary." *United States* v. *Lavender*, 583 F.2d 630, 633 (2d Cir. 1978). As the United States Court of Appeals for the Seventh Circuit observed in *Matter of Klein*, 776 F.2d 628, 631 (7th Cir. 1985), "[w]hen people may appeal any order enforcing a subpoena, it is easy to oppose every subpoena and make broad claims . . . . The claims are very hard to resolve, because they lack the focus on particular documents and defenses that an adjudication in contempt would produce. Win or lose, the appellants obtain delay, which they may value highly. If they lose . . . they can always make more particular claims of privilege and try again. In the meantime the targets are free, memories of other witnesses are fading, evidence is disappearing, the grand jury may have difficulty proceeding against other targets, and events may escape scrutiny as the statute of limitations takes its toll." We think that "[i]t would be unwise to let [accountants] avoid the rules of finality by allowing their clients to carry their banner and receive immediate review when the [accountant] alone would be unable to do so." *In re Grand Jury Proceedings, Subpoena to Vargas, supra* at 1466. The broad reading of *Perlman* adopted by some of the Federal Courts of Appeal invites cooperation between custodian and client to delay proceedings by claiming appeals.

Our decision does not deprive the parties of any review of their claim. Both Howmet and Price Waterhouse had the opportunity to argue motions to quash the subpoena in the Su-

perior Court. "A hearing by [the trial court judge] is so likely to be fully satisfactory that in the usual case there is no public policy favoring any form of review." *In re Oberkoetter, supra* at 17. See *Cobbledick* v. *United States, supra* at 328 ("Whatever right [the grand jury witness] may have requires no further protection . . . than that afforded by the district court until the witness chooses to disobey and is committed for contempt"); *id.* at 325 ("the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice"). Motions prior to and during trial, and, if need be, posttrial permit adequate methods by which to preserve any claim of privilege. Further, the judge may report the issue if the judge determines it "is so important or doubtful as to require the decision of the Appeals Court." Mass. R. Crim. P. 34, 378 Mass. 905 (1979).[10] In short, there are remedies for the exceptional case. In all other cases, the appeal must await the outcome of the trial proceedings.[11]

As to Price Waterhouse, we reiterate that "[c]onfining the right to get appellate review of discovery orders to cases where the party against whom the order was directed cared enough to incur a sanction for contempt is a crude but serviceable method . . . of identifying the most burdensome discovery orders and in effect waiving the finality requirement for them." *Marrese* v. *American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1158 (7th Cir. 1984).

Price Waterhouse's assertion that it is not prepared to "pack up its toothbrush and go to jail" is, we believe, a bit melodramatic. Contempt orders can be, and usually are, stayed pending appeal if the judge determines that the claim

---

[10]The trial judge may, pursuant to Rule 12 of the Uniform Rules on Impoundment Procedure (1991), impound the papers pending the decision of the Appeals Court in order to protect allegedly privileged materials.

[11]We remind prosecutors that, in cases involving attorney-custodians, they must comply with S.J.C. Rule 3:08, PF 15, as appearing in 396 Mass. 1217 (1986) ("It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness").

may have merit. If the raised objections are sustained on appeal, the citation would be expunged. In cases like this one, involving third-party privilege holders, assuming that the objections to the subpoena are nonfrivolous, we urge trial judges to stay orders of contempt pending appeal provided the appealing party acts promptly.

2. *The court may order Price Waterhouse be reimbursed for its reasonable expenses incurred in complying with the subpoena.* Because Price Waterhouse is not a party to the action, the Commonwealth will never have an opportunity to challenge the order requiring it to reimburse Price Waterhouse for the firm's reasonable expenses incurred in complying with the subpoena; "in substance and effect [then, the order] is final so far as concerns the [Commonwealth]." *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 20, 32 (1973), quoting *Check* v. *Kaplan*, 280 Mass. 170, 176 (1932). Therefore, the Commonwealth may appeal from that order. See *Borman* v. *Borman, supra* at 781.[12]

Price Waterhouse's memorandum in support of its motion to quash contained a request and authority for a court-ordered award of expenses incurred in complying with the subpoena. An attached affidavit of a Price Waterhouse employee estimated that Price Waterhouse's time and expenses associated with responding to the subpoena would come to "approximately \$45,000 to \$50,000." The Commonwealth filed no pleadings responding to Price Waterhouse's request for

---

[12]Even in cases where the parties are the same, we permit an interlocutory appeal in circumstances in which there might otherwise be no avenue of appeal. Cf. *Maddocks* v. *Ricker*, 403 Mass. 592, 600 (1988) ("if the appeal from an order . . . involves issues collateral to the basic controversy and if an appeal from a judgment dispositive of the entire case would not be likely to protect the client's interests, interlocutory review is appropriate"); Mass. R. Crim. P. 15, 378 Mass. 882 (1979) and Reporters' Notes to Mass. R. Crim. P. 15, 43C Mass. Gen. Laws. Ann. at 278 (West 1980). ("The Commonwealth's right to appeal is predicated upon the fact that an adverse pretrial ruling will, in the case of a motion to dismiss, 'preclude a public trial and . . . entirely terminate the . . . proceedings,' *Burke* v. *Commonwealth*, 373 Mass. 157, 161 [1977], or, in the case of a motion to suppress, result in the irretrievable loss of the right to present legal evidence. *Commonwealth* v. *Boswell*, 374 Mass. 263, 267 [1978]").

reimbursement. When, at the hearing on the motion to quash, the judge said that the Commonwealth should pay the expenses reasonably incurred by Price Waterhouse in complying with the subpoena, the Commonwealth did not raise any objections. About one month later, after receiving a bill for $19,485, the Commonwealth moved for reconsideration of the order. No subsequent hearing was held.

We hold that the judge has the authority to require the Commonwealth to pay for the production of the documentary evidence that it demanded. Rule 17 (a) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 885 (1979), provides that "[a] summons may . . . command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive . . . ." The Reporters' Notes to Mass. R. Crim. P. 17, 43C Mass. Gen. Laws Ann. at 290 (West 1980), state that the "prototype for this rule is found in Fed. R. Crim. P. 17." Some Federal courts have concluded that, in criminal as well as civil cases, a judge has authority to order reimbursement of expenses incurred in complying with a subpoena duces tecum. *In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977); *United States* v. *Friedman*, 532 F.2d 928, 937 (3d Cir. 1976) (holding that court can order government to reimburse reasonable cost of producing documents requested; "[e]ven if not literally applicable, [r]ule 45 (b), Fed. R. Civ. P., serves as significant precedent disclosing a broad congressional judgment with respect to fairness in subpoena enforcement proceedings"). The Advisory Committee Notes to Fed. R. Crim. P. 17 (c),[13] likewise state that rule 17 (c) is "substantially the same as rule 45 (b) of the Federal Rules of Civil Procedure." Both Fed. R. Civ. P. 45

---

[13]Rule 17 (c) of the Federal Rules of Criminal Procedure states, in pertinent part, "a subpoena may . . . command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."

(b) (1991), and Mass. R. Civ. P. 45 (b), 365 Mass. 809 (1974), provide that a court may quash or modify a subpoena duces tecum "if it is unreasonable or oppressive," or "condition denial of the motion [to quash or modify a subpoena] upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." We have said that we would follow the construction given to the Federal rules "absent compelling reasons to the contrary or significant differences in content." *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 180 (1975). Therefore, "we hold that a court in exercising its power under Mass. R. Crim. P. 17 (a) (2) "may, in appropriate circumstances, 'modify' the subpoena to require that the costs of compliance be borne by the [Commonwealth]." *In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum, supra* at 1308. See *Application of a Grand Jury Subpoena of the State of N.Y.*, 8 Mass. App. Ct. 760, 769 (1979) ("Where substantial expense will be involved in the production of records, it is not unusual for a court, on seasonable application, to make provision for reimbursement of expenses reasonably incurred"). See also *State ex rel. Pollard* v. *Criminal Court of Marion City*, 263 Ind. 236, 255 (1975) ("in a proper case, for example where production is sought of books or accounts currently in use, the court in its discretion may condition the production upon payment by the [S]tate of the necessary and reasonable costs of reproduction"). The order of reimbursement is within the court's authority. A judge may require the Commonwealth to pay for the production of the documentary evidence that it demanded.

We emphasize that we do not disturb the general rule that the recipient of a subpoena duces tecum is required to bear the costs of compliance; in the vast majority of cases, the costs of compliance will be assumed as part of the public duty of providing evidence. We require that, before the court conditions compliance with a subpoena on reimbursement for the reasonable costs incurred in complying, the judge "must make an individualized determination that the cost involved

in complying with the summons in question exceeds that [which the custodian of the documents] may reasonably be expected to bear as a cost of doing business." *United States* v. *Friedman, supra* at 938. A party who argues that compliance with a subpoena duces tecum is excessively onerous and resists a subpoena that is not conditioned on reimbursement bears the burden of proving that compliance is excessively onerous as well as that the expenses incurred in complying with the subpoena are reasonable.

The Commonwealth[14] has had no opportunity to contest the reasonableness of the amount claimed. Therefore, the Commonwealth is entitled to a hearing to challenge the amount claimed by Price Waterhouse as its reasonable expenses. We affirm the court's authority to order reimbursement and remand for a hearing and determination of the reasonableness of Price Waterhouse's expenses; we dismiss the appeals of Howmet and Price Waterhouse.

*So ordered.*

---

[14]The Commonwealth argues that it is protected by the principles of sovereign immunity from reimbursing Price Waterhouse. A sovereign immunity defense is inapplicable in this case, because, when the government commences an action, as here, it is not being "impleaded in its own courts." *Broadhurst* v. *Director of the Div. of Employment Sec.*, 373 Mass. 720, 722 (1977), quoting *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 664 (1953). See *Complaint of Tug Helen B. Moran, Inc.*, 420 F. Supp. 1282, 1290 n.5 (S.D.N.Y. 1976), rev'd on other grounds, 560 F.2d 527 (2d Cir. 1977); *Dade County* v. *Carter*, 231 So. 2d 241, 242 (Fla. Dist. Ct. App. 1970); Annot., 72 A.L.R.2d 1379, 1393 (1960).