NOTICE:  All slip opinions and orders are subject to formal revision
and are superseded by the advance sheets and bound volumes of the
Official Reports.  If you find a typographical error or other formal
error, please notify the Reporter of Decisions, Supreme Judicial
Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston,
MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11469


COMMONWEALTH  vs.  JASON J. LECLAIR & another.[1]



Hampshire.     March 6, 2014. - October 10, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, &
Lenk, JJ.[2]


Contempt.  Practice, Criminal, Contempt.  Constitutional Law,
    Self-incrimination.  Witness, Self-incrimination.



Complaint received and sworn to in the Northampton Division of
the District Court Department on May 2, 2012.

An adjudication of contempt was made by W. Michael Goggins, J.

The Supreme Judicial Court on its own initiative transferred the
case from the Appeals Court.


Paul R. Rudof, Committee for Public Counsel Services (Dana
Goldblatt with him) for the intervener.
    Cynthia M. Von Flatern, Assistant District Attorney, for the
Commonwealth.
    Michael C. Walsh & Stephanie K. Fattman, pro se, amici curiae,
submitted a brief.


DUFFLY, J.  A nonimmunized witness in a criminal trial

_____

[1] Mark Sheehan, intervener.

[2] Chief Justice Ireland participated in the deliberation on this
case prior to his retirement.

repeatedly refused to answer questions posed by the prosecutor concerning his use of illegal drugs on the ground of the privilege against self-incrimination. The prosecutor represented to the witness and the trial judge that the Commonwealth had no intention of pursuing such a prosecution, but when the witness, advised by his attorney, refused to answer, the judge directed the witness to do so. When the witness continued to refuse, the judge found the witness in summary criminal contempt and imposed a sentence of ninety days' incarceration, which he stayed pending resolution of the witness's interlocutory appeal.

In considering the witness's appeal, we are confronted with the question whether the judgment of contempt should not have entered because, regardless of the Commonwealth's intention, the compelled admission was a violation of the witness's privilege against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. We conclude that, in these circumstances, the witness validly invoked his privilege against self-incrimination, that his compelled responses to such questioning did not constitute a waiver of the privilege, and that the judgment of summary contempt should not have entered.

Background and prior proceedings. On May 2, 2012, the defendant was arraigned on a charge of assault and battery, G. L. c. 265, § 13A, as a result of an incident between the defendant and his girl friend

that had taken place in his friend Mark Sheehan's apartment at approximately 10 A.M. that morning.[3]

On August 1, 2012, the day that trial was scheduled to begin, the Commonwealth indicated its intent to call Sheehan as a witness, and the trial judge appointed counsel to represent Sheehan with respect to a potential assertion of a Fifth Amendment privilege against self-incrimination. Sheehan's counsel reported that Sheehan did indeed have a Fifth Amendment privilege not to testify, because, based on his answers to questions expected to be posed to him, the testimony could expose him to criminal charges of possession of a controlled substance and conspiracy to violate the drug laws. Counsel stated that Sheehan intended to assert that privilege. Following a brief in camera hearing,[4] the judge ruled that the invocation of the privilege was not valid because Sheehan had not shown that he faced a real risk that his answers to questions would "tend to indicate involvement in illegal activity, as opposed to a mere

---

[3] Mark Sheehan telephoned police after he had been awakened by the defendant yelling, "Call the police; call the police," amid a confrontation between the defendant and his girl friend.

[4] When the judge initially asked counsel to describe the substance of Sheehan's claim in open court, counsel requested an in camera hearing because she had informed her client that his statements to her would remain confidential; the judge declined to conduct the hearing in camera. Upon further questioning, counsel then informed the judge, without detail, that Sheehan's statements would involve an admission to illegal drug use, which could be used to impeach him. After counsel explained the criminal charges she believed might be implicated, the judge conducted a brief in camera hearing concerning the substance of Sheehan's potential testimony, as presented by his counsel.

imaginary, remote, or speculative possibility of prosecution."  See Commonwealth v. Martin, 423 Mass. 496, 502 (1996).

The jury-waived trial commenced, and the Commonwealth called Sheehan as its first witness.  On direct examination, the prosecutor did not pose any questions on Sheehan's use of illegal drugs during the evening prior to the incident.  On cross-examination, defense counsel first asked Sheehan about his use of alcohol that evening, and then inquired as to Sheehan's use of illegal drugs.  In response, Sheehan invoked his privilege against self-incrimination.  When the judge nonetheless instructed him to respond to defense counsel's questions concerning whether he had used illegal drugs on the night in question, and what type of drugs, Sheehan replied that he had used cocaine.  When defense counsel asked Sheehan how much cocaine he had used, Sheehan's counsel objected, and the objection was overruled.  On his counsel's advice, Sheehan thereafter continued to invoke his privilege and declined to respond to counsel's questions on the amount of cocaine Sheehan had used, or to any further questions on drug use.

The judge admonished Sheehan that his refusal could result in immediate criminal sanctions.  After a brief recess, the judge explained that refusal to answer questions based on a mistaken assertion of Fifth Amendment privilege would be summarily punished as criminal contempt.  He then inquired into the possibility of

immunizing Sheehan.[5]  After another brief recess during which the prosecutor consulted with his office, the prosecutor reported that no formal offer of immunity could be made.  The prosecutor stated also, however, "I don't think that it's something we have an interest in pursuing at this time."  He then proffered a written statement in which he represented that should Sheehan testify "to the use of controlled substances under [G. L. c. 94C] on that occasion the Commonwealth has no present, nor future interest in the prosecution of . . . Sheehan for such activity," and that Sheehan's "testimony alone that he consumed a controlled substance on that occasion is not enough to bring a formal prosecution against . . . Sheehan for that activity."

Sheehan's counsel informed the judge that she had advised her client of his privilege not to testify in response to questions regarding illicit drug use, and that her client would continue to invoke that privilege; counsel sought a stay of any criminal sanction, and stated that if it were determined on appeal that Sheehan had no valid Fifth Amendment privilege, he would testify immediately and purge the contempt.  The judge once again warned that Sheehan risked, on a finding of criminal contempt, an immediate sanction of incarceration, and inquired whether that changed counsel's position.

---

[5] Later in the proceedings, the judge informed the parties that, upon further inquiry, it appeared that immunity was not available in the District Court.  The judge was correct.  See G. L. c. 233, § 20E; Commonwealth v. Russ R., 433 Mass. 515, 520-522 (2001).

Sheehan's counsel informed the court that her client was "asserting his Fifth Amendment right not to testify, understanding that . . . he may be jailed for doing so."  At that point, the judge told Sheehan directly that his continued refusal to answer the question regarding drug use was "impermissible, and that contempt sanctions may be imposed, and that that may include criminal sanctions, and that that may include a penalty of up to [three] months incarceration, or [a] $500 fine."[6]  See Mass. R. Crim. P. 43, 378 Mass. 919 (1979).

The first question posed by defense counsel on resuming his cross-examination was whether on the morning of May 2 Sheehan had been using cocaine, to which Sheehan responded by invoking his privilege under the Fifth Amendment.  The judge thereupon found Sheehan in summary criminal contempt for failure to answer questions based on

---

[6] Counsel for Sheehan again objected, stating that she understood the matter to be in the nature of civil, not criminal, contempt, because the witness intended to purge himself of contempt upon a determination by an appellate court that his invocation was not valid. The judge disagreed, noting that the failure could be considered criminal contempt where the witness refused in the middle of trial to answer a question as to which the court had ruled he had no valid privilege and had ordered the witness to testify. When the judge repeated his warning to the witness that continued refusal could result in a finding of criminal contempt "that would expose [the witness] to incarceration, beginning forthwith, of up to [ninety] days in a [h]ouse of [c]orrection or a $500 fine," the witness stated: "Your Honor, what I don't understand is, as a[n] American, why I cannot exercise a constitutional right." Responding to further statements made by the judge, the witness indicated that he respected that there was a dispute regarding the question and understood the sanctions he faced, whereupon cross-examination resumed.

a mistaken claim of the Fifth Amendment privilege,[7] ordered that he be incarcerated for ninety days, and stayed the sentence pending the resolution of the interlocutory appeal.  The criminal trial itself was also stayed during the pendency of the appeal.  Sheehan's motion for reconsideration was denied.  Sheehan was allowed to intervene in the criminal proceeding, and he appealed the judgment of contempt to the Appeals Court.  We transferred the case to this court on our own motion.

Discussion.  "The right of a witness not to incriminate himself

---

[7] On a form captioned "Criminal Contempt, Summary Judgment," the judge checked off the following as the bases for the summary action: "The conduct occurred during court proceedings and in the judge's sight or hearing"; "Contemnor had been warned"; "Punishment does not exceed three months['] imprisonment or $500 fine"; and "Immediate adjudication of contempt was necessary to prevent disorder or disruption in courtroom."  In the block requesting a description of the conduct, the judge wrote:

"Mr. Sheehan is a Comm. witness in an A&B prosecution. Counsel was apptd to represent him in connection w/ a possible 5th Amendment privilege.  His atty stated at side bar and later in camera that the privilege was his potential prosecution for possession of cocaine and/or conspiracy to violate drug laws. Reason she claimed was that [the witness] would testify that he had been using cocaine at the time of the alleged A&B.  Court ruled that was insufficient basis and the invocation of the privilege was denied.  Ordered to testify by the court, he refused three times and was found in contempt."

In a footnote, the judge added:

"Mr. Sheehan was friends w/ def. and was a reluctant witness.  Ct. was concerned his claim of drug use was a fabrication for trial and lacked credibility and was being used as a vehicle to facilitate a path to acquittal for his friend, the [defendant], so that the evidence of drug use was so imaginary, remote or speculative that it should not serve as the basis for invocation of 5th Amendment privilege."

is secured by both the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights." Taylor v. Commonwealth, 369 Mass. 183, 187 (1975). Although "art. 12 of the Massachusetts Declaration of Rights provides broader protection from self-incrimination than does the Fifth Amendment to the United States Constitution," Pixley v. Commonwealth, 453 Mass. 827, 832 n.6 (2009), citing Commonwealth v. Mavredakis, 430 Mass. 848, 858-859 (2000), "[s]ince the decision of the United States Supreme Court in Malloy v. Hogan, 378 U.S. 1 (1964), which held that the Fourteenth Amendment guarantees to a witness testifying in a State court the protection of the Fifth Amendment, we have applied Federal standards in determining whether a claim of privilege is justified." Taylor v. Commonwealth, supra, citing Murphy v. Commonwealth, 354 Mass. 81 (1968).

"The proscription of the Fifth Amendment that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself' may be invoked whenever a witness reasonably believes that the testimony could be used in a criminal prosecution or could lead to other evidence that might be so used." Pixley v. Commonwealth, supra at 832, citing Kastigar v. United States, 406 U.S. 441, 444-445 (1972). See Commonwealth v. Funches, 379 Mass. 283, 289 (1979). Because the privilege against self-incrimination is "a fundamental principle of our system of justice," it "is to be construed liberally in favor of the claimant." Commonwealth v. Borans, 388 Mass. 453,

455 (1983).  Accordingly, "a refusal to testify on Fifth Amendment grounds must be upheld unless it is 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate."  Id. at 456, quoting Hoffman v. United States, 341 U.S. 479, 488 (1951).

Here, there was a more than adequate basis from which to determine that the anticipated testimony would have been an admission of violations of the drug laws that would tend to incriminate Sheehan, that the testimony could lead to other evidence that might have been used in a criminal prosecution, and therefore that invocation of the privilege not to testify was justified.  The incriminatory potential of the testimony was apparent from the nature of the specific questions intended to be propounded, concerning Sheehan's drug use and his ability to perceive and remember the incident; from this it was evident that there was a "real risk that his answers to questions [would] tend to indicate his involvement in illegal activity."  Commonwealth v. Martin, 423 Mass. 496, 502 (1979).  See Murphy v. Commonwealth, supra at 84, quoting Hoffman v. United States, supra at 486-487 (to sustain privilege "it need only be evident from the implications of the question, in the setting in which it was asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result").

That the substance was not available to be tested would not, in

and of itself, preclude prosecution for possession of a controlled substance approximately three months prior to the admission, see Commonwealth v. Dawson, 399 Mass. 465, 467 (1987) ("Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence"), and, in any event, such testing would not be required in a prosecution for conspiracy to violate the drug laws. See Commonwealth v. Funches, 379 Mass. 283, 288 n.5 (1979) ("Answering the questions concerning a conversation about drugs could lead to prosecution for conspiracy to violate the drug laws, G. L. c. 94C, § 40, or for the substantive offense, G. L. c. 94C, §§ 34-35").

Moreover, assuming, as the Commonwealth argues, that the confession to possession or use of an illicit substance is not alone sufficient to support a conviction, we nonetheless apply broad and "highly protective" standards to determine whether a claim of privilege is justified. Commonwealth v. Martin, supra at 502. Any admission by Sheehan to drug use on the night in question might have been used in questioning others concerning Sheehan's drug use on that night, or to provide leads for a subsequent criminal investigation. "The privilege 'not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant.'" Commonwealth v. Borans, supra at 456, quoting Hoffman v. United States, supra at 486. See, e.g., National Fed'n of Fed.

Employees v. Greenberg, 983 F.2d 286, 292 (D.C. Cir. 1993) ("Admitting the use of illegal drugs, at least use so recent that the statute[] of limitations [has] not run, would doubtless be incriminating"); Commonwealth v. Koehler, 614 Pa. 159, 213 (2012) (concluding trial judge correctly informed witness she had Fifth Amendment privilege not to answer questions regarding her drug use at time of incident about which she was testifying). Whether, as the judge believed, Sheehan may have had an additional motive not to testify was irrelevant where the circumstances otherwise support the determination that his responses would tend to incriminate him.

Nor was Sheehan's invocation rendered invalid because of the prosecutor's assertion that the Commonwealth did not intend to prosecute him on the basis of his testimony regarding the use of illicit drugs on the night in question.[8] See Commonwealth v. Martin, supra at 503 n.3 ("The prosecutor's denial of an intent to prosecute a witness is not sufficient to defeat an assertion of the privilege"); Commonwealth v. Borans, supra at 459, and cases cited. We have not embraced a rule that "would require the trial court, in each case,

---

[8] Even had the District Court judge had the authority to issue an immunity order, see note 5, supra, art. 12 of the Massachusetts Declaration of Rights requires that an immunized witness be granted transactional immunity, which protects a witness from being prosecuted not only by an individual assistant district attorney or by a district attorney's office, but also by any State prosecutorial authority. See Vaccari, petitioner, 460 Mass. 756, 759-761 & n.5 (2011). An assertion by an assistant district attorney for a single county could not suffice to meet this requirement.

to assess the practical possibility that prosecution would result from incriminatory answers." United States v. Miranti, 253 F.2d 135, 139 (2d Cir. 1958). In any event, "[t]his is not a case where recalcitrant witnesses have been granted immunity and then continued to refuse to testify." Taylor v. Commonwealth, supra at 188-189.

We also reject the Commonwealth's argument, advanced for the first time on appeal, that Sheehan waived his privilege when he answered two questions posed by defense counsel on cross-examination. Sheehan's answers were given in response to the judge's instruction that he was required to answer, and came after Sheehan had invoked his privilege prior to trial, and repeatedly during trial, immediately before the judge instructed him that he must respond. See Commonwealth v. Borans, supra at 458-459. In these circumstances, Sheehan's testimony "was not so freely and voluntarily given as to effect a waiver of his privilege on later questioning." Taylor v. Commonwealth, supra at 193. See Commonwealth v. King, 436 Mass. 252, 259 (2002);[9] Commonwealth v. Koonce, 418 Mass. 367, 378 (1994).

---

[9] In Commonwealth v. King, 436 Mass. 252, 259 (2002), we described the doctrine of waiver by prior testimony as follows:

"[T]he doctrine of waiver by prior testimony . . . is based on two pragmatic ramifications of the witness's prior voluntary, but potentially incriminating, testimony. One is that 'when a witness has freely testified as to incriminating facts, continued testimony as to details would no longer tend to incriminate.' [Taylor v. Commonwealth, 369 Mass. 183, 190 (1975)]. The second rationale given in support of the doctrine of waiver by testimony is that 'allowing the testimony to remain in a witness-selected posture would result in serious, unjust

Sheehan's testimony "could hardly be considered voluntary; he had sought to claim his privilege against self-incrimination and [the trial] judge had ruled that he had no such privilege."  Commonwealth v. Clemente, 452 Mass. 295, 318 n.33 (2008), cert. denied, 555 U.S. 1181 (2009) (witness did not waive privilege by testifying before grand jury where judge ruled he had no such privilege).[10]

Judgment of contempt vacated.

---

distortion; and the witness, having chosen to answer when he could have remained silent, "cannot be allowed to state such facts only as he pleases to state, and to withhold other facts."' Id., quoting Commonwealth v. Price, 10 Gray 472, 476 (1858)."

[10] Because of our decision that the judgment of contempt should not have entered, we need not reach the intervener's argument that civil, rather than criminal, contempt would have been applicable in these circumstances.  We emphasize, however, that "we give wide latitude to persons claiming privilege under the Fifth Amendment in order to give meaning to the privilege."  Commonwealth v. Corsetti, 387 Mass. 1, 9 n.11 (1982).