SUPERIOR COURT 
 
 IN RE: GRAND JURY INVESTIGATION

 
 Docket:
 1977GJO0065
 
 
 Dates:
 April 22, 2020
 
 
 Present:
 /s/Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND FURTHER ORDER ON EMERGENCY MOTION FOR RELIEF FROM JUDGMENT AND IMMEDIATE RELEASE IN RESPONSE TO COVID-19 PANDEMIC
 
 

 The Grand Jury is investigating a murder that allegedly occurred in Essex County. Upon the application of the Commonwealth, John Doe ("Doe")[1] was granted immunity pursuant to G.L. c. 233, § 20E, and ordered to testify before the Grand Jury. He refused to do so. On August 13, 2019, the Court adjudged Doe in contempt pursuant to G.L. c. 233, § 20H, and committed him to the Essex County House of Correction ("ECHOC") until further order. Thereafter, Doe refused to purge the finding of contempt by testifying before the Grand Jury and remained committed to the ECHOC.
 On April 13, 2020, in response to the Covid-19 pandemic, Doe filed an Emergency Motion For Relief From Judgment And Immediate Release In Response To Covid-19 Pandemic (Paper No. 19) ("Motion"), in which he seeks relief from the contempt "judgment" pursuant to Mass. R. Civ .P. 60(b)(6) and immediate release from custody. The Commonwealth opposes the requested relief and Doe's release from custody. (See Paper Nos. 20 and 21).
---------------------------
 
[1]A pseudonym.
 Page 1 of 11
 On April 15, 2020, the Court conducted a hearing on the Motion. On April 16, 2020, the Court allowed the Motion and issued an Order On Emergency Motion For Relief From Judgment And Immediate Release In Response To Covid-19 Pandemic. (Paper No. 21).
 The Court now sets forth its reasons for allowing the Motion and issues a further Order thereon.
BACKGROUND & PROCEDURAL HISTORY 
 As stated, the Grand Jury in this matter is investigating a murder that allegedly occurred in Essex County. The Commonwealth believes Doe has material information that would assist in the investigation and seeks his testimony before the Grand Jury.
 In July 2019, the Court issued a material witness warrant for Doe's arrest and appearance before the Grand Jury. See G.L. c. 277, § 70 (authorizing issuance of warrant for appearance of witness).
 On July 19, 2019, Doe was arrested on the warrant and brought before the Court. Over the Commonwealth's objection, the Court released Doe on conditions of release and ordered him to appear and testify before the Grand Jury on July 22, 2019.[2] See G.L. c. 276, §§ 45, 47 (authorizing bail or recognizance for witness to appear in future).
 On July 22, 2019, Doe appeared with counsel before the Grand Jury and refused to testify on self-incrimination grounds. Upon the application of the Commonwealth, the Court (Feeley, J.) granted Doe immunity pursuant to G.L. c. 233, § 20E, and ordered
---------------------------
 
[2] Doe was subject to GPS monitoring and twenty-four hour per day home confinement.
 Page 2 of 11
Doe to appear and testify before the Grand Jury on July 31, 2019. The conditions of Doe's release remained in place.
 On July 31, 2019, Doe again appeared with counsel before the Grand Jury and refused to testify, notwithstanding the grant of immunity. After hearing, the Court released Doe on the same conditions of release over the Commonwealth's objection and ordered him to appear for a contempt hearing on August 13, 2019.
 On August 2, 2019, at the request of the Commonwealth the Court found cause to believe Doe violated the conditions of his release and issued a warrant for Doe's arrest.[3] Later that day, Doe was arrested on the warrant and brought before the Court. The Court conducted a hearing (at which Doe was represented by counsel), revoked the conditions of release, and ordered Doe committed to the ECHOC until the contempt hearing.
 On August 13, 2019, the Court conducted a contempt hearing pursuant to G.L. c. 233, § 20H. Doe appeared and was represented by counsel. No witnesses were called to testify and the Commonwealth submitted three exhibits. The Court adjudged Doe to be in contempt. On August 14, 2019, Doe appeared before the Court for a hearing on disposition and the Court ordered him committed to the ECHOC "until further order of the court."
 On November 13, 2019, Doe appeared before the Court for a status hearing and continued to refuse to purge the finding of contempt by testifying before the Grand Jury.
---------------------------
 
[3] GPS monitoring showed several instances where Doe was located outside the place of home confinement (i.e., Doe apparently took short walks nearby).
 Page 3 of 11
 On March 10, 2020, "the Governor declared a state of emergency to support the Commonwealth's response to the threat of COVID-19. On March 11, 2020, the World Health Organization formally declared the expanding spread of the COVID-19 virus a global pandemic." Committee for Public Counsel Services v. Chief Justice of the Trial Court, 484 Mass. 431, 433 — 434 (2020) ("CPCS").
 In response to the pandemic, beginning on March 13, 2020, the SJC "issued a series of orders with respect to court proceedings, new filings, and trials, designed to 'protect the public health by reducing the risk of exposure to the virus and slowing the spread of the disease." Id. at 434. Pursuant to these orders, the Superior Court issued a series of standing orders that, in combination with the SJC's orders, prohibits grand jury proceedings, including this one, from March 13 through at least July 6, 2020. See Superior Court Standing Order 4-20.
 As stated, on April 15, 2020, the Court conducted a hearing[4] on the Motion and, on the next day, issued an Order allowing the Motion.
DISCUSSION 
 As stated, Doe argues that the risk of harm to him due to the potential spread of Covid-19 within the facility at which he is committed warrants his immediate release from confinement. Doe cites Mass. R. Civ. P. 60(b)(6) as the basis for granting the relief he seeks.
---------------------------
 
[4] The Court conducted the hearing telephonically pursuant to Superior Court Standing Order 420. Counsel waived Doe's presence at the hearing.
 Page 4 of 11
 I. STATUTORY IMMUNITY FRAMEWORK 
 Some discussion is warranted regarding the framework of statutory immunity in criminal proceedings.
 When a witness "validly refuse[s]" on self-incrimination grounds to testify before a grand jury that is investigating certain enumerated offenses, including murder, the Commonwealth may request an order granting immunity to the witness. G.L. c. 233, § 20E(a). The witness is entitled to appointment of counsel and a hearing, which is closed to the public, before the request is approved. G.L. c. 233, § 20E(a) — (b). A grant of immunity under the statute results in the witness being granted full "transactional" immunity from any prosecution brought in the Commonwealth's courts, and "use" immunity in any prosecution brought in another state or by the Federal government.[5][6] In re Vaccari, 460 Mass. 756, 758 (2011); see also G.L. c. 233, § 20G.
 Thereafter, a witness granted immunity "shall not be excused from testifying .. . on the ground that the testimony or evidence required of him may tend to incriminate him." G.L. c. 233, § 20C. Moreover, the "grant of immunity, and the resultant duty to testify, [ ] extend[s] to successive grand juries." Commonwealth v. Raczkowski, 19 Mass. App. Ct. 991, 992 (1985) (citation omitted).
 If an immunized witness refuses to testify, "the [Commonwealth] shall institute contempt proceedings against such witness." G.L. c. 233, § 20H. Furthermore, "after hearing or trial, if such witness is adjudged in contempt of court, he shall be punished
---------------------------
 
[5] An immunized witness may be prosecuted for perjury and contempt. G.L. c. 233, § 20G.
[6] "[Article] 12 of the Massachusetts Declaration of Rights requires that an immunized witness be granted transactional immunity." Commonwealth v. Leclair, 469 Mass. 777, 783 (2014) (citation omitted).
 Page 5 of 11
by imprisonment in the house of correction for a term not to exceed one year or until he complies with the order of the court, whichever occurs first." Id. (emphasis added). Notwithstanding, the reference to "punishment" in § 20H, the sentence imposed upon a finding of contempt is civil, rather than criminal, in nature because it "[i]s coercive and not punitive in nature." Commonwealth v. Steinbera, 404 Mass. 602, 608 (1989) (citing Shillitani v. United States, 384 U.S. 364, 368-370 (1966); Raczkowski, 19 Mass. App. Ct. at 992). In fact, as has been frequently observed, the contemnor holds the keys to the jail because he may terminate his confinement by testifying. See Shillitani, 384 U.S. at 368 ("the petitioners carry 'the keys of their prison in their own pockets") (citation omitted).
 With respect to the appeal of a finding of contempt under § 20H, "[t]he rules of practice and procedure relative to criminal appeals as provided by the Massachusetts Rules of Criminal Procedure and the Massachusetts Rules of Appellate Procedure [ ] apply." G.L. c. 233, § 20H. However, loyders compelling nonparty witnesses to testify in criminal cases are interlocutory orders and generally not appealable. The usual way of challenging such orders is to disobey them and appeal from the subsequent contempt order." In re Vaccari, 460 Mass. at 758 (citations omitted) (emphasis added) (affirming denial of request for extraordinary relief under G.L. c. 211, § 3, because no irreparable harm shown).
 Page 6 of 11
 
II. THE ORDER OF COMMITMENT UNDER § 20H IS AN INTERLOCUTORY ORDER WHICH THIS COURT MAY NOW STAY 
 With the above framework in mind, the Court will address the merits of the Motion. As stated, Doe argues that Rule 60(b)(6) of the Rules of Civil Procedure may serve as a basis for the relief he seeks. On the other hand, the Commonwealth argues that the rules of criminal, not civil, procedure apply in contempt actions under § 20H. The Commonwealth further argues Doe's remedy was to file a motion to revise and revoke under Mass. R. Crim. P. 26, and it is too late for him to bring such a motion. However, the Court concludes the parties' arguments are equally misplaced.
 As stated above, this Court's order under G.L. c. 233, § 20H, of August 14,2019, committing Doe to the ECHOC is an interlocutory order, not a final order or judgment. In re Vaccari, 460 Mass. at 758. In fact, the interlocutory nature of a "sentence" of incarceration under § 20H is clear given that the contemnor may purge the finding of contempt and be freed from custody at any time as soon as he testifies. Therefore, even if the civil, rather than criminal, rules of procedure govern, as Doe argues, Mass. R. Civ. P. 60(b) does not apply because, on its face, it only applies to a "final judgment, order or proceeding." Mass.R.Civ.P. 60(b) (emphasis added). No such final judgment or order entered here. To be sure, the Court's Order of August 14 is that Doe shall be held in custody "until further order of the court."
 The Commonwealth's argument that the Rules of Criminal Procedure apply is equally unavailing. Although, according to the plain language of the statute, the criminal rules apply to appeals of orders under § 20H, the immunity statute is silent regarding which version of the rules of procedure apply to events other than appeals. The instant action is obviously not an appeal. However, the Court need not reach the issue of which
 Page 7 of 11
rules of procedure govern this action because under both sets of rules, this Court has the inherent authority to stay the interlocutory order of commitment it issued on August 14, 2019.
 Under the Rules of Civil Procedure, "[the] court has power to modify its prior judgments or orders in cases still pending as long as no final order has been issued, and the jurisdiction of the court continues." Bailey v. Proctor, 166 F.2d 392, 395 (1st Cir. 1948) (citations omitted). To be sure, as stated in the Reporter's Notes to Rule 60, "Interlocutory judgments [ ] do not fall within Rule 60(b). They remain subject to the complete power of the court rendering them to afford such relief from them as justice requires." Reporter's Notes to Mass.R.Civ.P. 60 (1973) (emphasis added).
 Likewise, in criminal actions "[i]t is settled that a judge has considerable discretion to reconsider prior orders, provided the request is made within a reasonable time." Commonwealth v. Gonsalves, 437 Mass. 1022, 1022 (2002) (citations omitted); see also Commonwealth v. Cronk, 396 Mass. 194, 196 (1985) ("While the Massachusetts Rules of Criminal Procedure do not expressly permit a judge to rehear a matter, no policy prohibits reconsideration of an order or judgment in appropriate circumstances.").
 At bottom, this Court has the inherent authority to stay the order of commitment in this case at any time it remains operative. See In re Vaccari, 460 Mass. at 758 (citing Matter of a Grand Jury Subpoena, 411 Mass. 489, 498 — 499 (1992) and Womack petitioner, 444 Mass. 1015, 1015-1016 (2005)) ("trial judges can and often do stay contempt judgments pending appeal.").
 Page 8 of 11
 
III. UNDER THE CIRCUMSTANCES, STAYING THE ORDER OF COMMITMENT IS IN THE INTERESTS OF JUSTICE 
 Now that the Court has determined it has the authority to stay the order of commitment, the Court must address the merits of Doe's request for release from custody. Doe argues that his release from custody is necessary given the risk of coronavirus infection in a custodial setting. Doe further contends his immediate release is supported by the SJC's reasoning in CPCS granting certain pretrial detainees a rebuttable presumption of release on personal recognizance. See CPCS, 484 Mass. at 435. On the other hand, the Commonwealth objects to Doe's release from custody because Doe does not have any risk factors that make him vulnerable to infection or more susceptible to COVID-19, Doe has a history in these proceedings of violating conditions of release, Doe admits that he has no intention to purge the finding of contempt by testifying before the Grand Jury, and Doe's release is contrary to the coercive purpose of the order of commitment.
 The Commonwealth's arguments in opposition of Doe's release from custody are reasonable and well-supported. Doe is twenty years-old, in good health, and does not claim he suffers from any medical condition that makes him a higher risk of coronavirus infection.[7] Moreover, Doe did not produce evidence of significant instances of coronavirus infections or COVID-19 illness among the inmates and staff at the correctional facility.[8] Furthermore, Doe violated the conditions of his release during the
---------------------------
 
[7] At the hearing on April 15, Doe reported he had not tested positive for the coronavirus and was not suspected of being infected.
[8] The Commonwealth submitted an affidavit of the person in charge of the correctional facility describing the efforts at the facility to reduce the risk of spread of coronavirus infection.
 Page 9 of 11
pendency of this action by leaving his home to walk around the neighborhood on a few occasions, some of which occurred after this Court specifically admonished him not to do so. [9] In addition, Doe flouts the Court's authority by refusing to testify and is a material witness in a murder investigation, a crime for which Doe would not have a rebuttable presumption of release on personal recognizance under CPCS if Doe were a pretrial detainee.
 Nevertheless, under the unique circumstances caused by the COBID-19 pandemic, Doe's temporary release from custody is in the interests of justice. Although Doe does not have any risk factors that make him more susceptible to suffering life-threatening consequences from COVID-19, simply being housed in a correctional institution increases the risk of infection and the likelihood of a worse outcome. See CPCS, 484 Mass. at 436 - 437. Moreover, notwithstanding Doe's present expressed disavowal of ever testifying before the Grand Jury, it is currently impossible for him to do so because all grand jury proceedings in the Commonwealth are foreclosed until July 6, 2020. Thus, Doe's present incarceration serves no legitimate coercive purpose and does not promote justice. See generally Commonwealth v. One 1987 Ford Econoline Van, 413 Mass. 407, 412 (1992) ("Noncompliance with a court order may be excused where compliance becomes impossible, but the burden of proving impossibility lies with the alleged contemnor.") (citations omitted). Furthermore, Doe has been incarcerated for almost nine months. Given he has no criminal record of convictions (or eve arrests), Doe likely would have been released from custody weeks ago if the sentence
---------------------------
 
[9] Although the record does not clearly reflect it, this Court remembers an instance prior to the violations addressed at the August 2 hearing when GPS monitoring reported Doe exited his home to take a walk and the Court admonished Doe for doing so. Nevertheless, Doe continued to do so in the days preceding the Court's revocation of his release on August 2.
 Page 10 of 11
imposed in this matter was criminal, rather than civil, in nature. See 120 CMR §200.02(1) (setting parole eligibility at one-half the term of incarceration for persons serving sentences of at least 60 days in the house of correction).
 In sum, given the futility of Doe's present incarceration in achieving the coercive goal of § 20H and the current health emergency, Doe's continued detention is not consonant with justice and a temporary stay of the order of commitment is warranted.
 For the above reasons, the Motion is ALLOWED.[10]
FURTHER ORDER
 In addition to the Order of April 16, 2020, which shall remain in full force and effect, it is HEREBY ORDERED that:
 1. Doe shall be confined to, and not leave, the property of the home previously ordered twenty-four hours per day other than to meet with his attorney; attend medical, mental health and dental appointments; and, attend court proceedings.[11]
 2. The Court will reconsider the conditions of Doe's release at the hearing on May 5, 2020.
 3. This Memorandum of Decision shall be provisionally IMPOUNDED. However, it is the intention of the Court to make the Memorandum publicly available shortly. Therefore, if a party objects to the public availability of the Memorandum, counsel shall file a written opposition and the grounds therefor by April 29, 2020, and the Court will then proceed accordingly.
@/s/Jeffrey T. Karp Associate Justice, Superior Court
@April 22, 2020
---------------------------
 
[10]In normal times, Doe would be a candidate for GPS monitoring to ensure he may be located in the event he fails to appear at further proceedings in this matter because he has flouted the Court's authority and has previously violated conditions of release. However, the SJC's Order Concerning The Imposition Of Global Positioning System (GPS) Monitoring As Condition Of Release Or Of Probation requires a finding of a compelling public safety need to order GPS monitoring during the current health emergency. Here, there is no such compelling public safety need.
[11] The Court understands that the home at which Doe will be staying is a private home. It is the Court's intention that Doe may exit the interior of the home to get fresh air, etc., but shall remain on the property at all times.
 Page 11 of 11
xxz